# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

FILED

MAR 2 6 2007

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____ DEPUTY CLERK

| | | |
|---|---|---|
| IKON OFFICE SOLUTIONS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. SA06CA0434 |
| | § | |
| JOHN L. FURNISH, An Individual, | § | |
| AND SOUTHWEST LEGAL | § | |
| SOLUTIONS, INC. | § | |
| Defendants. | § | |

## DEFENDANT FURNISH'S MOTION
## FOR SUMMARY JUDGMENT WITH SEALED EXHIBITS

NOW COMES John L. Furnish, a Defendant herein, and moves the Court to enter summary judgment in his favor on all of Plaintiff IKON's claims. In support whereof, he would show as follows:

## I.

## STATEMENT OF THE CASE

This is an action by IKON, a document copy service, against its former employee John L. Furnish ("Furnish") and his new employer Southwest Legal Solutions, Inc. ("Southwest"), another document copy service, alleging that Furnish has breached his original and supplemental non-competition agreements with IKON; that he has misappropriated IKON's trade secrets and confidential information; and that he has tortiously interfered with IKON's contracts and prospective relationships with its customers. IKON sues Southwest for allegedly tortiously interfering with Furnish's non-competition agreement with IKON; tortiously interfering with IKON's actual and prospective business relations with IKON's customers; and for misappropriating IKON's trade secrets and confidential information. Discovery in this case is substantially complete.

## II.

## <u>SUMMARY OF ARGUMENT</u>

John Furnish is the "copy guy" – a salesman who calls on local law firms to obtain their orders for document reproduction and who follows up to make sure those orders are processed correctly and on time.  IKON claims that everything Furnish ever learned or experienced belongs to IKON and that its ownership rights will be protected only if Furnish is driven out of the business.  The non-competition agreement Furnish signed constitutes an unreasonable restraint of trade because in fact IKON has no business interest warranting protection.  The minimal training provided to Furnish was neither unique nor proprietary; Furnish did not take IKON's customer list or information; the names of IKON's customers and customer information were not confidential; and IKON cannot claim ownership rights in the general knowledge, skills, and personal goodwill he accrued while employed by IKON.

Even if IKON could demonstrate a protectable business interest, the restrictions imposed upon Furnish with respect to time, area, and scope of activity grossly exceed those reasonably necessary to protect its claimed interest, and would cause hardship to Furnish and injury to the public.  Not only is IKON unable to show trade secret protection for its customer list, but there is no evidence that Furnish misappropriated it as alleged.  Furnish has competed with IKON during the one-year term of the covenant, but not unfairly.  He is merely doing business with customers as an employee of Southwest, which had relationships with most of those same customers long before Furnish became an employee.

2

## III.

## <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir. 1995); *Overseas Inns S.A.P.A. v. United States*, 911 F.2d 1146, 1148 (5th Cir. 1990). Because IKON has failed to make a showing sufficient to establish the existence of many essential elements of its case and cannot create a genuine fact issue with respect to those elements, Defendant Furnish's motion for summary judgment should be granted.

## IV.

## <u>IKON HAS NO INTEREST WARRANTING PROTECTION</u>

A covenant not to compete is disfavored in the law because it is a restraint on trade. Allowance is made for such covenants only when they meet certain statutory requirements. *See* TEX. BUS. & COM. CODE ANN. § 15.05 (West 2006); *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 599 (Tex. App. – Amarillo 1995, no writ); *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 832 (Tex. 1991). Among other things, the covenant must be ancillary to an otherwise enforceable agreement. TEX. BUS. & COM. CODE ANN. § 15.50(a). To meet this requirement, the consideration given by the employer in the agreement must give rise to the

employer's interest in restraining the employee from competing, and the covenant must be designed to enforce the employee's consideration or return promise in the agreement. *Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 647 (Tex. 1994).

IKON indiscriminately contends that every bit of information acquired by Furnish during his employment, whether experiential or conveyed to him by IKON, is confidential and proprietary information and a trade secret. Here, Furnish will address what appear to be the key components of what he learned or acquired and which IKON claims he misappropriated when he left.

### A.    Training Not Special or Unique

To be sure, special training or knowledge acquired by an employee during employment can constitute a legitimate interest which is protectable. *Tom James Co. v. Mendrop*, 819 S.W.2d 251, 253 (Tex. App. – Fort Worth 1991, no writ) (no protectable interest found). Conversely, where the employee is not highly trained and does not have unique skills, the employer has no interest worthy of protection. When Furnished joined NightRider, he already had around 20 years of sales experience. The training IKON provided, both initially and one year later, was in basic selling skills that Furnish already possessed. IKON acknowledges that all sales organizations, whether selling uniforms, cars, or dictations systems, provide sales training. Tab 3, pp. 17-18.[1] Furnish did not attend any of the advanced courses offered by IKON University but, instead was called upon to teach students there. IKON also provided him training in digital imaging, but this was only for his general information: account managers such as Furnish did not actually do the imaging. There is no evidence, moreover, that Furnish

---

[1]    Furnish relies on excerpts of deposition testimony and documents produced by IKON as summary judgment evidence, which are attached to Defendant Furnish's Appendix in Support of his Motion for Summary Judgment.

misappropriated or used the proprietary software used by IKON for its digital imaging process. The digital training was, in other words, of no use to him once he left the company.

General skills and knowledge developed through the course of employment are not the type of interest which justifies protection under a restrictive covenant. *Evan's World Travel, Inc. v. Adams*, 978 S.W.2d 225, 231 (Tex. App. – Texarkana 1998, no pet.) (citing Restatement (Second) of Contracts § 188 comment g); *Hunke v. Wilcox*, 815 S.W.2d 855, 858 (Tex. App. – Corpus Christi 1991, writ denied) (citing *Numed, Inc. v. McNutt*, 724 S.W.2d 432, 434 (Tex. App. – Fort Worth 1987, no writ); *Expo Chem. Co. v. Brooks*, 572 S.W.2d 8, 10 (Tex. App. – Houston [1st Dist.] 1978), *rev'd on other grounds*, 576 S.W.2d 369 (Tex. 1979)).

The present facts may be contrasted with those of *Martin v. Credit Protection Ass'n.*, where an employee joined a debt collection agency without having any prior experience. 757 S.W.2d 24 (Tex. App. – Dallas 1988), *rev'd on other grounds*, 793 S.W.2d 667 (Tex. 1990). The agency trained him in the methods of exacting payment from debtors, and over time, he became its vice-president and had considerable control over all sales and marketing, as well as daily access to all customer lists and collection reports. He even achieved eminence as "Mr. CPA" (Credit Protection Association), so that his identity was inseparable from that of the agency. *Id.* at 28-29. Unsurprisingly, the court enforced the non-competition agreement on these facts. By comparison, Furnish was a well-experienced salesman upon joining IKON and received no special or unique training in how to sell document copying services. He may well have given as much knowledge as he received.

## B.     Customer List Not Taken; Customer Names Not Secret

Furnish denies having taken any information about IKON's customers in either printed or electronic form, such as customer names, contact information, preferences, sales history, etc.,

and there is no evidence to the contrary.  Nor is there any evidence that Furnish misappropriated any information about IKON's marketing plans, production schedules or methods, financial condition, etc.  When he resigned his employment, Furnish left all of that information behind. IKON nevertheless contends that because Furnish has done business with the customers he dealt with while at IKON, misappropriation of such information may be inferred.  The issue here, however, is whether Furnish's use of his recollection of the customers he served amounts to theft of a trade secret.

The question of whether a customer list is a trade secret is a question of law.  *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 468 (5th Cir. 2003).  Texas courts consider the following three factors when ascertaining whether a customer list is a trade secret: (1) what steps, if any, an employer has taken to maintain the confidentiality of the list; (2) whether a departing employee acknowledges that the list is confidential; and (3) whether the content of the list is readily ascertainable or can be compiled with minimal effort and expense.  *Id.* at 467; *SCM Corp. v. Triplett Co.*, 399 S.W.2d 583, 586 (Tex. App. – San Antonio 1966, no writ).

IKON's claim of trade secret status for its customer list fails because its customer list is readily ascertainable or can be created without significant expense.  IKON's corporate representative acknowledged that the directories of the local bar and young lawyers' and paralegals' associations, as well as the local telephone directory,[2] are all useful sales tools for the account managers.  He also admitted, and Furnish agrees, that the local legal market is small enough that every copy service fairly well knows what its competitors are doing.  If a prospective customer asked for the names and contact information of customers who were using

---

[2] The Court may take judicial notice that San Antonio law firms and attorneys spend millions of dollars for advertising in the SBC/AT&T Yellow Pages every year so that the public will know their contact information and areas of practice.

IKON's services, moreover, IKON would freely disclose this information.  As for customer preferences, Furnish explains that whenever he picks up copying work from a customer, he always asks them how they want the work done, when they want it back, etc., because "it's my job" to ask those questions.  Tab 1, p. 133.  IKON similarly acknowledges that every copying job, even those coming from established customers, has specific requirements, and that the customer gives the specifications for the work to every copy service that is proposing to do it.  Tab 3, pp. 53-54, 56.  These matters aside, it is undisputed that Furnish's employer Southwest was already doing business with 31 of the 43 customers IKON claims Furnish has taken from it.  *See* Affidavit of Rex Rexilius, attached to the motion for summary judgment filed by Southwest.

The facts of the *Guy Carpenter* case, *supra*, are analogous to those before the Court.  There, the employee was a reinsurance broker.  Even though the employer took steps to protect its customer list and the employee signed a contract stating that the list was confidential, the court held that the list was not a trade secret entitled to protection under Texas law.  It was readily ascertainable, said the court, because participants in the reinsurance market freely disclosed the identity of their reinsurance broker and the nature of reinsurance products they regularly consumed.  The employee's list of customers was also relatively short, consisting only of those companies he personally serviced while in the plaintiff's employment.  He could easily reconstitute this list, said the court, even without the aid of a trade publication.  334 F.3d at 468.

Similarly, countless courts in this state, including our supreme court, have recognized that customer lists are not protectable trade secrets if they consist of information that is already available or known in the industry.  *See, e.g., DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 684 (Tex. 1990) (competitors could readily identify customers and their needs and pricing information simply by asking the customers directly); *Anderson Chem. Co. v. Green*, 66 S.W.3d

434 (Tex. App. – Amarillo 2001, no pet.) (employer not entitled to injunctive relief because former employee did not take any materials with him and information regarding employer's accounts was generally known); *Allan J. Richardson & Assoc., Inc. v. Andrews*, 718 S.W.2d 833, 837 (Tex. App. – Houston [14th Dist.] 1986, no writ) (employer's client list, names of key people to be contacted in client companies, potential clients, and markets of employer were readily ascertainable and not trade secrets subject to protection); *Numed, Inc. v. McNutt*, 724 S.W.2d 432, 435 (Tex. App. – Fort Worth 1987, no writ) (no trade secret where customer list can be compiled by calling hospitals and doctors and asking the identity of their supplier).

See also *Wissman v. Boucher*, 240 S.W.2d 278, 280 (Tex. 1951) (general knowledge); *Metallurgical Indus. v. Fourtek, Inc.*, 790 F.2d 1195, 1199 (5th Cir. 1986) (general knowledge); *Interox Am. v. BPG Indus.*, 736 F.2d 194, 201-02 (5th Cir. 1984) (readily ascertainable and voluntarily disclosed information); *Sens v. Estate of Buys*, 160 S.W.3d 684, 690-91 (Tex. App. – Fort Worth 2005, no pet.) (identities of corporation's clients could easily be acquired by others).

Also instructive is the case of *Hunke v. Wilcox*, 815 S.W.2d 855, (Tex. App. – Corpus Christi 1991, writ denied). There, the employer, a dental practice, claimed that because it had introduced the employee to many professionals and key people who referred patients to the employer, many doors were opened for the employee, allowing him to obtain new patients who, but for the employer's introductions, would not have been available to the employee. The court found that the formation of professional contacts was within the realm of general experience over which the employer could not assert a proprietary interest. The employee's non-competition covenant was therefore held unenforceable. So also in the present case, Furnish does not deny that IKON introduced him to customers over the years, but that did not render those customer contacts proprietary or place them within the realm of trade secrets.

8

### C.    Furnish's Personal Goodwill Belongs to Furnish

According to IKON, the two principal reasons why customers hire it rather than the competition are (1) it is the largest document company and has a nationwide reach; and (2) it trains employees to assure they know what they're doing. Tab 3, pp. 83-85. These factors allow IKON to do what "a local mom and pop shop just can't." *Id.*, pp. 85-86. When Furnish left IKON, he did not take these competitive advantages with him, nor could he. Southwest's "footprint" is Bexar County, not the nation. *Id.*, p. 38. Notwithstanding IKON's apparent establishment of "IKON University" to provide advanced or specialized sales training to its personnel, Furnish was not a beneficiary; he was provided training in basic selling skills, skills he already possessed by virtue of his 20 years as a salesman prior to joining IKON. IKON's message to its customers upon Furnish's departure – that it still offered the same high-quality production and administrative teams, and that customers merely needed to "get used to [a] new face" – summed it up well; Furnish took nothing that belonged to IKON. Tab 3, pp. 151-152.

But what about goodwill? IKON's corporate representative does not know whether it claims a substantial interest in its goodwill. Tab 3, p. 167. He also recalls that at least two customers said they would continue using Furnish after his departure, out of *personal* loyalty to him. *Id.*, pp. 105-107. Furnish himself has accurately observed that customers would follow him no matter where he works, because they trust him to "do their job right." Tab 1, p. 225.

The goodwill that Furnish took with him cannot be taught in a classroom, because it is the most essential ingredient of success in any job: personal initiative. Furnish did not develop his customer following thanks to some proprietary supercomputer, but because he "hustled" and he cared. A man's talents are his own, not his master's.

> When people leave a business to work for another or to open a firm of their own, many are capable of taking with them a sizable number of the clients whom they

had served at their previous place of employment.  If they are not in possession of some type of personal magnetism or personal goodwill, they will be incapable of retaining those clients or customers.  Shrewd employers and franchisors know this and seek to deprive the employee/franchisee of the fruits of his goodwill by requiring that he enter into an agreement containing a restrictive covenant.  The covenant is generally unfair to the employee/franchisee, for when that person is placed in the position of being unable to compete with the former employer/franchisor, his personal goodwill is effectively neutralized.

*Hill v. Mobil Auto Trim, Inc.*, 725 S.W.2d 168, 171-172 (Tex. 1987).  An employer does not demonstrate a protectable interest in goodwill merely upon showing that its customers like its employee, *i.e.*, that the employee generates goodwill for the company.  If this were the law, then every employer who gives an employee access to its customers – even Wal-Mart, for example – would have enough to justify a covenant in restraint of trade.  In the document business, it seems self-apparent that customers will give their business to the company that provides good quality copies, properly organized, on-schedule, and for a competitive price.  While friendships may inevitably be made as they are in all walks of life, IKON has no legal claim to the friendships Furnish formed while working there.

This is not to say that employer goodwill does not exist or is not protectable in a proper case – a case such as was decided by the Texas Supreme Court this past October in *Alex Sheshunoff Mgt. Servs., L.P. v. Kenneth Johnson*, 209 S.W.3d 644, (Tex. 2006).  There, the employee gave professional advice to banks and other financial institutions as a high-level consultant.  There was no dispute that his employer entrusted confidential product information to him.  The employee's employer had to nurture its relationships with clients very carefully, for its business depended on clients' confidence in its expertise and judgment about intangible matters of finance.  The employer's goodwill with its customers was an interest worthy of protection, as found by the court.  *Id.* at 656-57.  The goodwill generated by the hard work of "the copy guy," by comparison, is not something the law allows an employer to claim as its own.

Because IKON has no protectable business interest or protectable goodwill, its non-competition agreement cannot be justified. *Dayton Group of Texas, Inc. v. Smith*, 800 S.W.2d 285, 290 (Tex. App. – Corpus Christi 1990, writ denied) (if non-compete covenant not necessary, it cannot be reformed).

### V.

### NON-COMPETE COVENANT UNREASONABLE ON ITS FACE

Whether a non-competition agreement is "reasonable" is a question of law for the court. *Travel Masters,* 827 S.W.2d at 832; *Light,* 883 S.W.2d at 644.

Assuming for the moment that the Court found that IKON *does* have an interest that is worthy of protection, the non-competition covenant would be enforceable only "to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE ANN. § 15.50(a) (West 2006). The present non-competition agreement fails all three elements of the reasonableness test – time, geographical area, and scope of activity.

#### A.    "Tolling" Provision Extends Term of Covenant Unreasonably

The Second Agreement  purports to prohibit competition only "for a period of twelve calendar months after termination of employment." Tab 4, p. 2, § 8.[3]  Section 20 of the Second

---

[3] IKON claims that the Second Agreement is merely "supplemental" to the First Agreement. The two agreements, however, are in direct conflict with one another in a number of material respects. The Second Agreement, signed six years after the first, expands the definition of "IKON customers" from those with whom Furnish dealt during the 12 months ending with his termination, to any customer *or prospective customer* with whom Furnish had any contact at any time while with IKON, regardless of whether he actually serviced the account. The Second Agreement also expanded the geographical scope of the covenant from the county or counties in which Furnish worked, to "[a]ll fifty (50) states which comprise the United States." The Second Agreement also deleted the onerous liquidated damages provision found in the First Agreement and added the "tolling" provision that purports in effect to double the length of time for which Furnish may not compete. The Second Agreement is more than a supplement. Its terms are so inconsistent with those of the First Agreement that the two cannot subsist together. It is, as a matter of law, a novation that replaced the First Agreement. *See CTTI Priesmeyer, Inc. v. K&O Ltd. Ptnshp.,* 164 S.W.2d 675, 681-82 (Tex. App. – Austin 2005, no pet.); *Scalise v. McCallum,* 700 S.W.2d 682, 684 (Tex. App.

Agreement, however, states that "the period of restraint . . . shall be automatically tolled for the amount of time the violation continues." *Id.*, p. 4. IKON seeks to enforce this language in the present suit, demanding "the greater of its actual compensatory, punitive, and liquidated damages" sustained by virtue of the alleged breach, as well as an injunction barring Furnish from competing with it, even though the 12-month term of the covenant expired some six months ago on September 18, 2006. *See* Verified Complaint and Demand for Jury Trial at pp. 31, 33, 39, 40; Tab 3, pp. 177-179. Thus, not only does IKON want the full damages it allegedly sustained during the now-expired term of the covenant – it wants to enforce the covenant for another, second year.

In *Wilson v. Chemco Chem. Co.*, 711 S.W.2d 265 (Tex. App. – Dallas 1986, no writ), the appeals court held that the trial court had erred in enforcing the covenant from the date of the *judgment*. Because the covenant provided for a one-year term, the appeals court held that the trial court should not enlarge the time of the covenant's restrictions. *Id.* at 268. *See also, Cardinal Personnel, Inc. v. Schneider*, 544 S.W.2d 845, 847 (Tex. Civ. App. – Houston [14th Dist.] 1976, no writ) (covenant that by its terms will not take effect until an injunction is issued would prevent competition for unlimited time and is unreasonable). Indeed, the injunction is generally measured from the date of termination, even where there is undisputed evidence that the employee breached the covenant. *American Express Fin. Advisors, Inc. v. Scott*, 955 F.Supp. 688, 693 (N.D. Tex. 1996); *Property Tax Assocs. v. Staffeldt*, 800 S.W.2d 349, 351-52 (Tex. App. – El Paso 1990, writ denied). And while the courts sometimes depart from this general rule where, as here, the contract provides otherwise, IKON wants a double recovery: damages allegedly incurred during the 12-month term, *plus* a second 12-month bar commencing on the

– Dallas 1985, writ ref'd). In the discussion that follows, Furnish will therefore focus his argument on the Second Agreement.

date of final judgment in this case.   This unreasonable attempt at overreaching should be rejected.

**B.      Geographical Scope of the Covenant is Excessive**

It is undisputed that Furnish's entire decade working for IKON was spent in the San Antonio area, except for a brief period when he managed IKON's Corpus Christi office at IKON's request.   This fact notwithstanding, the Second Agreement purports to restrict Furnish from competing with IKON in "[a]ll fifty (50) states which comprise the United States." Tab 4, p. 2, § 9.   The Second Agreement also eliminated the provision in the First Agreement that excused Furnish from compliance with the covenant in the event IKON's San Antonio office were to close.   *See* Tab 2, p. 4, § 2.1(d).

Texas courts have generally held that when an otherwise valid non-competition covenant is limited to the territory in which the employee worked during his employment, the geographical restriction is reasonable.   *See, e.g., Diversified Human Resources Group, Inc. v. Levinson-Polakoff,* 752 S.W.2d 8, 12 (Tex. App. – Dallas 1998, no writ) (citing *Justin Belt Co. v. Yost,* 502 S.W.2d 681, 685 (Tex. 1973) and *Martin v. Linen Sys. for Hospitals, Inc.,* 671 S.W.2d 706, 709 (Tex. App. – Houston [1st Dist.] 1984, no writ.)); *Evan's World Travel,* 978 S.W.2d at 231 (covenant reformed to apply only to single county in which travel agent worked). Conversely, a covenant that purports to cover areas where the employee did *not* work has generally been held unenforceable.   *See Gomez v. Zamora,* 814 S.W.2d 114, 118 (Tex. App. – Corpus Christi 1991, no writ); *Wilson,* 711 S.W.2d at 268.

A liquidated damages clause tending to restrict competition is subject to the same standards of reasonableness as covenants not to compete.   *Peat Marwick Main & Co. v. Haass,* 818 S.W.2d 381, 385 (Tex. 1991).   The liquidated damages clause in the First Agreement is itself

unreasonable and requires reformation. Such a clause is unenforceable unless the damages agreed upon represent a reasonable forecast of the damages likely to be suffered by a party in the event of a breach. *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). It is also well-established in the law that the measure of a party's damages for the breach of a commercial contract are the profits the party would have earned but for the breach. *Interceramic, Inc. v. South Orient R.R.*, 999 S.W.2d 920, 928 (Tex. App. – Texarkana 1999, pet. denied); *see also Texas Instrs. v. Teletron Energy Mgmt.*, 877 S.W.2d 276, 279 (Tex. 1994). The liquidated damages specified by the First Agreement, by comparison, consist of the *gross revenues* earned by IKON from the subject customer during the year preceding the employee's termination. Tab 2, p. 4, § 2.1(c). In fact, the clause provides, without explanation, for a multiplication of those gross earnings. *Id.* If IKON had earned $200 a month from a customer for six of the twelve months preceding termination and $0 for the remaining six months, for example, IKON's liquidated damages would nevertheless be $2,400. This bears no resemblance to a reasonable damage estimate; it is simply a penalty clause.

The facts of the *Peat Marwick* case, *supra*, resemble those presently before the court. There as here, the agreement effectively prohibited the former partner-shareholder of an accounting firm from performing work for clients of his former firm, even though he never had actual contact with those clients during his employment; and also prohibited him from working for entities that first became clients of his former firm *after* he had left the firm. *Compare* Tab 4, p. 2, § 8(c) (prohibition against soliciting any present "or prospective" customer of IKON). The supreme court held that this definition of "clients" was unreasonable as "broader than necessary to protect legitimate interests." 818 S.W.2d at 387.

Even if IKON offers photocopying services in all 50 states, Furnish worked in only one county of one state, and briefly in a second county. The geographical scope of the non-competition covenant is overly broad and unenforceable as a matter of law.

**D.     Covenant Would Injure Furnish and the Public as Well**

The protection afforded by an agreement not to compete must not be outweighed by either the hardship to the promisor or any injury to the public. *Deaton v. United Mobil Networks, L.P.*, 926 S.W.2d 756, 761-62 (Tex. App. – Texarkana 1996, no writ) (citing *DeSantis*, 793 S.W.2d at 682); *Peat Marwick*, 818 S.W.2d at 386. Here, IKON would prohibit Furnish from working in the document business anywhere in the United States and force Furnish to seek work in a different industry. Granting IKON the relief requested would also impede free and open competition among copy services in the San Antonio area, to the detriment of the consuming public. *See Peat Marwick*, 818 S.W.2d at 386-87 (agreement would limit public's choice of accountants). These concerns plainly outweigh IKON's interest in assuring that Furnish does no business with any customer with whom he ever had "contact" while at IKON. For this and the other reasons stated above, IKON's non-competition covenant fails every test of reasonableness.

**VI.**

**REFORMATION PRECLUDES DAMAGES AND ATTORNEY'S FEES**

Even if IKON is found to have a protectable business or other interest, which Furnish denies, the non-competition agreement would not be enforceable unless modified to address the concerns discussed above. In such a case, "the court *shall* reform the covenant to the extent necessary to cause the limitations contained in the covenant . . . to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee . . ." TEX. BUS. & COM. CODE ANN. § 15.51(c) (West 2006) (emphasis added).

15

Reformation of the covenant, however, precludes the recovery of damages for a breach of the covenant that occurred prior to reformation; reformation also precludes the plaintiff's recovery of attorney's fees. *Id.*; *Peat Marwick, supra,* 818 S.W.2d at 388; *Deaton,* 926 S.W.2d at 762 (award of $100,000 in damages vacated); *Perez v. Texas Disposal Sys., Inc.,* 53 S.W.3d 480, 482 (Tex. App. – San Antonio 2001, *rev'd on other grounds,* 80 S.W.3d 593 (2002); *Butler v. Arrow Mirror & Glass, Inc.,* 51 S.W.3d 787, 796-97 (Tex. App. – Houston [1st Dist.] 2001, no pet.).

Once a court reforms a covenant that is overbroad as written, the only potential relief available to a plaintiff would be injunctive in nature. *Perez,* 53 S.W.3d at 482. Here, however, injunctive relief would be inappropriate for at least two reasons. First, IKON has no goodwill or other business interest needing the protection of a covenant. Second, the 12-month term of the covenant expired six months ago, on September 18, 2006. By delaying suit until after seven months of the non-competition period had elapsed, and by failing to pursue a temporary restraining order or preliminary injunction, IKON has waived its opportunity to obtain a timely reformation, if indeed one were justified. Now that Furnish has been engaged by a competitor for a year and a half, the *status quo ante* cannot be restored. Injunctive relief should therefore be denied.

## VII.

### FURNISH SHOULD RECOVER HIS COSTS AND ATTORNEY'S FEES

If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, the promisor establishes that the promisee knew at the time of the execution of the agreement that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee, and the promisee sought to enforce the covenant to a greater extent than was necessary to protect the goodwill or other business interest of the promisee, the court may award the promisor the costs, including reasonable attorney's fees,

actually and reasonably incurred by the promisor in defending the action to enforce the covenant.

TEX. BUS. & COM. CODE ANN. § 15.51(c) (West 2006).

Even though he was designated to speak on the factors considered by IKON when determining the temporal and geographic scope and scope of activity of the non-competition agreements, IKON's corporate representative claimed ignorance of why IKON required Furnish to sign the Second Agreement, or why the Second Agreement expanded the geographic scope of the non-competition provision. Tab 3, pp. 35, 172, 176-177. Other evidence, however, reveals that IKON did know, at the time it signed the Second Agreement, that the non-competition provisions were overly broad and unreasonable. The First Agreement, prepared by IKON when it was known as NightRider, prohibited Furnish from competing only in the county or counties in which he had done work for IKON, and then only with respect to the IKON customers with whom he had had dealt during the 12 months ending with his termination. This reflected an understanding by IKON of the case law prevailing at the time the First Agreement was signed in 1995.

Then, six years later, IKON presented Furnish with the Second Agreement which expanded the area of non-competition to all 50 states and extended the ban to all customers with whom Furnish had *ever* had contact while employed by IKON, regardless of whether he actually dealt with those customers. In addition, the Second Agreement prohibited Furnish for the first time from contacting *prospective* customers with which IKON might do business in the future. The Second Agreement also introduced a "tolling" provision allowing it to extend the non-competition period well beyond the original 12 months, even if it recovered damages for a breach occurring during the non-competition period. These changes were plainly unreasonable,

17

and IKON must be charged with knowledge that the statutory and case law during the intervening six years had not been changed to permit such overreaching.

By this lawsuit, IKON also seeks to enforce the covenant to a greater extent than is necessary to protect its goodwill or other business interest.  As discussed above, IKON cannot demonstrate a business interest deserving of protection.  Furnish did not misappropriate any proprietary or confidential information or trade secret of IKON; he merely called on customers he had served while at IKON, relying exclusively on his recollection of those customers and the personal goodwill he enjoyed with them.  IKON has no legitimate claim to Furnish's general knowledge, skills, experience, or personal goodwill.  IKON also unreasonably seeks damages for the full 12-month non-competition period and, in addition, an injunction enforcing the covenant for another 12 months.  IKON should therefore be ordered to reimburse Furnish for the costs and attorney fees he has reasonably incurred in defending this action.  It need not be shown for this purpose that IKON knew that the claims it has asserted *in this litigation* are unreasonable or overly broad, only that by this action IKON is seeking greater relief than is necessary to protect its goodwill or other business interest.

## VIII.

### FURNISH DID NOT MISAPPROPRIATE TRADE SECRETS

IKON alleges that Furnish misappropriated its trade secrets and/or confidential information.  In order to recover on this tort, IKON must prove that it owned a trade secret and that Furnish used or disclosed it (1) in violation of a confidential or contractual relationship with IKON, or (2) after acquiring the trade secret with notice that the disclosure was improper.  *K&G Oil Tool & Serv. v. G & G Fishing Tool Serv.*, 314 S.W.2d 782, 787-88 (Tex. 1958).  As discussed above, IKON had no information that qualified as a trade secret.  Furthermore, there is

no evidence that Furnish took with him, in either written or electronic form, any information about IKON's training, customers, customer contacts, production methods, or marketing plans. The only information Furnish used was what he remembered about customers and the personal goodwill they possessed for him. IKON's claim for misappropriation of trade secrets is therefore without merit and should be denied.

## IX.

## IKON HAD NO CONTRACT WITH
## WHICH FURNISH TORTIOUSLY INTERFERED

IKON elsewhere alleges that Furnish intentionally interfered with its existing contract(s). In order to recover for this tort, IKON must prove that it had a valid contract; that Furnish willfully and intentionally interfered with the contract; and that the interference proximately caused injury to IKON. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002). Here, IKON had only one contract with a customer for a term, as opposed to an *ad hoc* arrangement under which copies were made "by the job" upon request. That contract, with the U.T. Health Science Center, was awarded as the result of a competitive procurement. There is no evidence that the Health Science Center breached or cancelled its contract with IKON. Rather, the contract expired according to its terms, and IKON chose not to re-bid the work.

Proof of a defendant's interference with a contractual relationship, moreover, requires a showing that the interference was motivated by malice and served no useful purpose for the inducing party. *Davis v. Lewis*, 487 S.W.2d 411, 414 (Tex. Civ. App. – Amarillo 1972, no writ). Furnish's sales to his former employer's customers cannot be called malicious; he was merely engaging in legitimate competition for their business. In many cases, moreover, those same customers were already doing business with Furnish's new employer Southwest. *See* Affidavit

of Rex Rexilius.  This was legitimate market activity, nothing more.  IKON's claim for tortious

interference with its existing contract(s) should therefore be denied.

X.

**FURNISH DID NOT INTERFERE**
**WITH IKON'S PROSPECTIVE BUSINESS RELATIONS**

Finally, IKON accuses Furnish of having interfered with its prospective business

relations.  In order to prevail on this cause of action, IKON must show, among other things, that

there was a reasonable probability that it would have entered into a business relationship with a

third person; that Furnish intentionally interfered with the relationship; and that Furnish's

conduct was independently tortious or unlawful.  *Wal-Mart Stores v. Sturges*, 52 S.W.3d 711,

726 (Tex. 2001).  This claim fails for want of proof that Furnish committed an independent tort,

such as fraud or assault.  There is no evidence of this.

IKON presumably intends to rely on its separate claim that Furnish misappropriated its

trade secrets, as the predicate for this tortious interference claim.  Furnish, however, engaged in

no such misappropriation.  This, the second of IKON's tortious interference claims is therefore

equally without merit and must be denied.

XI.

**CONCLUSION**

Wherefore, Defendant John Furnish ask the Court to grant summary judgment in this

favor on all of Plaintiff's claims, and to award him his costs and reasonable attorney fees

necessarily incurred in defending against this action.

20

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
112 E. Pecan Street, Suite 2600
San Antonio, Texas 78205
(210) 354-1300 – Telephone
(210) 277-2702 – Facsimile

By: _____

    Robert E. Bettac
    State Bar No. 02268400
    Dawn M. Knepper
    State Bar No. 24034525

**ATTORNEYS FOR DEFENDANT
JOHN L. FURNISH**

### CERTIFICATE OF SERVICE

    This is to certify that on this 26th day of March, 2007, a copy of Defendant Furnish's Motion for Summary Judgment with Sealed Exhibits was served on the following:

*Via Certified Mail*
    William H. Ford
    Larry E. Gee
    Ball and Weed, P.C.
    Trinity Plaza II, Suite 500
    745 East Mulberry
    San Antonio, Texas 78212

    Jenna D. Evans
    Jennifer A. McGlinn
    Shannon Hampton Sutherland
    Duane Morris LLP
    30 South 17th Street
    Philadelphia, Pennsylvania 19103-7396

*Via First Class Mail*
    Valin L. Woodward
    531 S. Sycamore Ave.
    New Braunfels, Texas 78130

_____
Robert E. Bettac