IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IKON OFFICE SOLUTIONS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. SA06CA0434 |
| | § | |
| JOHN L. FURNISH, An Individual, | § | |
| AND SOUTHWEST LEGAL | § | |
| SOLUTIONS, INC. | § | |
| Defendants. | § | |

## DEFENDANT FURNISH'S REPLY IN SUPPORT OF HIS
## MOTION FOR SUMMARY JUDGMENT

**A.     Furnish Took No Goodwill Belonging to IKON.**

IKON argues that the only legally valid goodwill at stake is that between IKON and its

customers, which Furnish garnered solely because of "IKON's national reputation, training,

technology, administrative and production staff." Response, p. 4. It is undisputed, however, that

Furnish received no advanced or specialized training himself, Tab 3, pp. 151-152, and that he left

IKON's national reputation, technology, and staff behind. Furnish took only the information he

remembered about the customers, the vast majority of whom were already customers of

Southwest. IKON's customers surely knew that the technology, administrative and production

staff remained with IKON.[1]

In urging that IKON has no legal claim to his personal goodwill or the friendships he

formed with IKON customers, Furnish relies in part on the Texas Supreme Court's decision in

*Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168 (Tex. 1987). IKON responds that *Hill* was

"squarely *superseded* by the Texas Covenants Not to Compete Act" (emphasis in original), citing

---

[1]     Wood told IKON's customers that "we still have the same production team, same production staff, same administrative team, everybody else is the same, so all you really have to get used to now is just the new face." Tab 3, pp. 151-52.

*Alex Sheshunoff Mgmt. Svcs., L.P. v. Johnson*, 209 S.W.3d 644, 652-53 (Tex. 2006).[2] Response, p. 4. While the court in *Sheshunoff* did note the legislature's apparent intent "to return Texas' law generally to the common-law as it existed prior to *Hill*," *id.* at 653 (internal quotation marks omitted), the court did *not* suggest that every pronouncement it had made in *Hill* was "squarely superseded" by the 1989 statute. The principal holding in *Hill* – what the court called "the standard we adopt today" – was that "[c]ovenants not to compete which are primarily designed to limit competition or restrain the right to engage in a common calling are not enforceable." *Hill*, 725 S.W.2d at 172.

Furnish has not raised the "common calling" defense and has cited *Hill* solely for the proposition that IKON may not lay claim to the personal following he generated through his own hard work, particularly when IKON's corporate representative has testified that main advantages it has over competitors are its nationwide presence and the training it provides its employees – the sort of goodwill Furnish could not and did not take. Tab 3, pp. 83-84, 91. The business relationships Southwest already had with the customers at issue precludes any serious claim that the customers believed that by using Southwest, they were really getting IKON. IKON's goodwill has been left intact.

**B.     Conflicts Between the Agreements Show the Second Replaced the First.**

Regarding novation, IKON disregards the more fundamental holding of *CTTI Priesmeyer, Inc. v. K&O Ltd. Ptnshp.*, 164 S.W.2d 675, 681 (Tex. App. – Austin 2005, no pet.): "a court may infer that a new agreement is a novation of an earlier agreement when the new agreement is so inconsistent with the earlier agreement that the two agreements cannot subsist together." The parties' intent is placed in question only in the absence of such inconsistent

---

[2]     IKON says Furnish has "misplaced reliance on outdated, *pre-statute* cases." Ironically, IKON itself cites a number of court decisions that predate the 1989 enactment of the Texas Covenants Not to Compete act. TEX. BUS. & COM. CODE ANN. § 15.50 *et seq.* This demonstrates IKON's tacit admission that the Act did not do away with the common law, and that the common law is essential to interpreting the terms of art used in the statute.

provisions. *Id.*; *see also Fulcrum Cent. v. Autotester, Inc.*, 102 S.W.3d 274, 277-78 (Tex. App. –

Dallas 2003, no pet.).

To say that the provisions of the Second Agreement are inconsistent with those of the

First would be an understatement. The definition of "IKON customers" grew from those that

Furnish actually dealt with during the last 12 months of his employment, to any customer *or*

*prospective customer* with whom he ever had contact while with IKON, regardless of whether he

actually serviced the account. The geographic scope of the covenant exploded from the

county[ies] in which Furnish worked to "[a]ll fifty (50) states which comprise the United

States".[3] Through the addition of a "tolling" provision, moreover, the Second Agreement

extended the length of time for which Furnish may not compete indefinitely.[4]

IKON also performed a major overhaul of the scope of activity prohibited by the

covenant. The First Agreement barred Furnish from work related to "commercial copying and

commercial imaging." Tab 2, ¶ 2.1(a). The Second Agreement (1) prohibits Furnish from

working in *any capacity* for an enterprise that competes with "the Company's Business" in any

respect and, more importantly, (2) adds a drastically expanded definition of "the Company's

Business" to include activities such as selling or leasing a wide array of office equipment,

telephony, and office networking systems.[5] Tab 4, p. 2. Reasonable minds cannot differ: the

---

[3]      IKON claims that Texas courts have deemed nationwide covenants to be reasonable, but does not explain why. In both cited cases – *Vais Arms, Inc. v. Vais*, 383 F.3d 287 (5th Cir. 2004) and *Williams v. Powell Elec. Mfg. Co.*, 508 S.W.2d 665 (Tex. App. 1974) – the employee regularly serviced a nationwide market, unlike Furnish. Notably, both decisions also involved covenants ancillary to the sale of a business, rather than an employment contract, and the *Williams* court stated it would be far less inclined to affirm a national covenant in an employment case.

[4]      Furnish has already addressed the invalidity of the "tolling" provision at pp. 11-13 of its Motion. The only discovered case that directly addresses the tolling of a non-competition term is *ALW Mktg. Corp. v. McKinney*, 421 S.Ed.2d 565, 568 (Ga. Ct. App. 1992), where the court condemned the clause as being of perpetual duration and therefore invalid on its face.

[5]      Under the Second Agreement, the "Company's Business" includes:
        selling, servicing, renting and leasing copier equipment, facsimiles, micrographic equipment, computers, shredders, offset printers, typewriters, laser printers, word processing equipment, digital printers and/or other related office products and services, facilities management and state-

3

evidence of a novation is conclusive and cannot be overcome simply by calling the Second

Agreement a "supplement" or by telling Furnish to "just comply with both."

## C. The Scope of the Prohibited Activity is Unreasonable.

Contrary to IKON's assertion, Furnish has challenged the scope of activity prohibited by

the Second Agreement as being unreasonable. Furnish's Motion, p. 2. Not only does the Second

Agreement unreasonably bar Furnish from working in the document service industry nationwide,

but it also excludes him from the panoply of business activities referenced above. It is

undisputed that Furnish never engaged in any type of work for IKON other than selling

document reproduction services. Tab 3, pp. 49-50. The excessive restrictions imposed by the

non-competition covenant are unreasonable and unenforceable as a matter of law.

## D. IKON's Affidavits Create No Genuine Issue of Material Fact.

In support of its Response, IKON submits the affidavits of Steven Janisch and Chad

Smith. These affidavits are argumentative, entirely conclusory, and provide no operative facts,

and therefore should be given no weight.[6] Bare allegations of fact, ultimate or conclusory facts,

and legal conclusions are no substitute for specific facts showing genuine issues of material fact

and cannot defeat summary judgment. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th

Cir. 2002); *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 324 (5th Cir. 1998).

---

of-the-art copying and/or scanning operations, outsourcing, print on demand, imaging, printed
mail, network consulting and training, systems integration and software development, telephony
and cabling businesses, and office networking and/or systems solution businesses, the ongoing
development and implementation of additional business segments providing outsourcing and
networking sales and services, and the growth through acquisitions of entities engaged in any and
all of the aforementioned businesses.
Tab 4, p. 1.

[6]     For example, Janisch states that "IKON provides, and Furnish received, LDS-specific sales training
regarding IKON's method of identifying and consulting with clients regarding their document management needs."
Janisch Aff., ¶ 11. Janisch does not specify the modules or components of this training, or when or where Furnish
allegedly received it. Similarly, Smith takes issue with the description of Furnish as a "copy-guy" and instead
describes himself as a "document management consultant," but wholly fails to describe what this means. Smith
Aff., ¶ 4.

The only competent evidence presented by IKON is the unrehearsed deposition testimony of its corporate representative. *See* Tab 3. Furnish therefore moves to strike both affidavits.

**E.      IKON Wants Five Years' Lost Profits From a One-Year Covenant.**

IKON cites *Henshaw v. Kroenecke*, 656 S.W.2d 416 (Tex. 1983), as endorsing a liquidated damages clause virtually identical to the clause IKON seeks to enforce here. The purpose intended by the covenant in *Henshaw*, however, was quite different. The parties were two medical consultants who included provisions in their partnership agreement designed to forecast the share of the business either partner was likely to take with him in the event of a dissolution. Both the jury and the court found that the agreement made no allowance for injunctive relief and in fact was not intended to prevent competition, thus hardly the agreement IKON presents to this Court. *Id.* at 417. Furnish never sold an ownership interest in IKON.

Attempting to justify its excessive liquidated damages provision, IKON offers only Chad Smith's unexplained speculation that "it will take *at least* five years for IKON to re-establish the relationships and goodwill it once had with the clients Furnish has solicited on Southwest's behalf." Smith Aff., ¶ 27. This is evidence of but one fact: IKON is attempting to enforce the covenant "to a greater extent than [is] necessary to protect the goodwill or other business interest of the promisee," thereby entitling Furnish to recover his fees and costs of defense. TEX. BUS. & COM. CODE ANN. § 15.51(c).

**F.      Conclusion.**

Having no business interest deserving legal protection, IKON has nonetheless undertaken a war of attrition against its former employee and is demanding draconian sanctions in an effort to squelch legitimate competition. Furnish prays that the Court not allow this to continue.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
112 E. Pecan Street, Suite 2600
San Antonio, Texas 78205
(210) 354-1300 – Telephone
(210) 277-2702 – Facsimile

By: _____
Robert E. Bettac
State Bar No. 02268400
Dawn M. Knepper
State Bar No. 24034525

**ATTORNEYS FOR DEFENDANT,
JOHN L. FURNISH**

## CERTIFICATE OF SERVICE

This is to certify that on this 18th day of April, 2007, a copy of Defendant Furnish's Reply in Support of his Motion for Summary Judgment was served on the following:

*Via Certified Mail*
> William H. Ford
> Larry E. Gee
> Ball and Weed, P.C.
> Trinity Plaza II, Suite 500
> 745 East Mulberry
> San Antonio, Texas 78212

> Jenna D. Evans
> Jennifer A. McGlinn
> Shannon Hampton Sutherland
> Duane Morris LLP
> 30 South 17[th] Street
> Philadelphia, Pennsylvania 19103-7396

*Via First Class Mail*
> Valin L. Woodward
> 531 S. Sycamore Ave.
> New Braunfels, Texas 78130

_____
Robert E. Bettac