UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IKON OFFICE SOLUTIONS, INC.      *
                                 *
           Plaintiff,            *
                                 *
     v.                          *   CIV. NO. SA-06-CA-434-FB
                                 *
JOHN FURNISH, individually, and  *
SOUTHWEST LEGAL SOLUTIONS, INC.  *
                                 *
           Defendants.           *


## MEMORANDUM AND RECOMMENDATION

Before the Court is defendant John Furnish's motion for summary judgment. (Docket nos. 31,32,41). Plaintiff responded. (Docket no. 38,46). Upon consideration the Court concludes the motion should be **GRANTED in part** and **DENIED in part.**

### Factual Background

The undisputed facts reveal John Furnish (Furnish) began his employment with Nightrider Overnight Copy Services, a document management and copy service in 1995. As part of his employment, Furnish called on local law firms to obtain orders for document reproduction. At the time he joined, Furnish signed Nightrider's "Account Manager Employment Agreement" dated August 21, 1995 (the "First Agreement"). **See IKON Response, Docket no. 39, exh. E.** This agreement provided, in pertinent part, that because IKON derived "substantial good will from sales and repeat sales to

1

customers and referrals", for twelve months following termination, Furnish would not "contact, cause to be contacted, or communicate with any specific accounts or customers for which [he] was responsible or with whom [he] had contact during the twelve (12) months immediately preceding termination (the Prohibited Competing Activities)." **Docket no. 39, exh. B. p.3.** After the agreement specifies the meaning of "trade secret" and "confidential information", Furnish further agreed he would "not, during or after the term of his employment,... disclose Confidential Information". *Id.* **at pp. 5-6.**

In January 1997, Nightrider changed its name to IKON Office Solutions (IKON).  Following the change, IKON required Furnish to sign another agreement (the "Second Agreement").  *Id.* **at exh. F.** In the Second Agreement, in the subsection titled, "Confidential Information and Non-Competition", Furnish provided that after termination he would "keep and retain in confidence and shall not disclose" to any person, except as required by law, any defined "Confidential Information".  *Id.* **at exh. F, p. 2.**  Furnish further provided that for twelve months after termination, he would not directly or indirectly,

   a. Become associated or affiliated with, employed by, or financially interested in any business operation which engages in competition with [IKON's] business...;

   b. Make any effort, directly or indirectly, to solicit, encourage, or induce any customer or

> prospective customer of [IKON] to obtain business
> and/or services from any entity ... which is
> engaged in any activity competitive with the
> business of [IKON];
>
> c.    Cause or attempt to cause any present or
>       prospective customer of [IKON] to reduce its
>       business with [IKON]; or,
>
> d.    Accept business from any Customers, on [his] behalf
>       or on behalf of any other person and/or entity not
>       affiliated with [IKON] irrespective of whether [he]
>       solicited or originated [IKON's] relationship with
>       such Customers.

*Id.*

When Furnish left his employment with IKON in 2005, he went to work for its competitor, Southwest Legal Solutions, Inc. (Southwest). While at Southwest, Furnish continued to provide copy services to four clients he held at IKON.  IKON then filed this suit.

Against Furnish, IKON alleges two, separate causes of action for breach of the First Agreement and breach of the Second Agreement.  IKON also asserts causes of action of misappropriation of trade secrets and tortious interference with actual and prospective business relationships.  Against Southwest, IKON alleges tortious interference with its actual and prospective business relationships, tortious interference with its' Employment Agreements with Furnish, and misappropriation of trade secrets. Furnish asserted affirmative defenses that the employment agreements are unenforceable and the affirmative defense of novation, i.e. the Second Agreement constituted a termination of

3

the First Agreement.  Furnish now seeks summary judgment on all of IKON's causes of action and his affirmative defenses.

## Standard of Review

Federal Rule of Civil Procedure 56(b) provides a defending party may move, with or without supporting evidence, for a summary judgment in the party's favor.  Summary judgment shall be rendered if the pleadings and evidence show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  **FED. R. CIV. P. 56(c).**  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323 (1986).  The party opposing a motion must present affirmative evidence to defeat a properly supported motion for summary judgment.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 257 (1986).  A defendant who moves for summary judgment on the plaintiff's claim may satisfy its burden in two ways: (1) submit evidence that negates the existence of a material element of the plaintiff's claim; or (2) show there is not evidence to support an essential element of the plaintiff's claim.  ***Celotex Corp.***, 477 U.S. at 325.  An adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise, must set forth specific facts showing there is a genuine issue for trial; if he does not so

4

respond, summary judgment, if appropriate, shall be entered against him.  FED. R. CIV. P. 56(e).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.  ***Anderson***, 477 U.S. at 247-248.  The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  ***Id.***  All of the evidence and inferences drawn from that evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment.  ***Hibernia Nat'l Bank v. Carner***, 997 F.2d 94, 97 (5th Cir. 1993).

## DISCUSSION

## I.   Breach of Non-Compete Covenants

In the complaint, IKON alleges Furnish breached the employment agreements when he accepted employment with Southwest and solicited "nearly all of the very same clients he had previously serviced for IKON."  Through these actions, IKON alleges Furnish took unfair advantage of its goodwill with its customer base and took unfair advantage of the relationships developed through his work for IKON.

Furnish argues the employment agreements are unenforceable because IKON does not possess any tangible confidential or proprietary information worthy of protection by a non-compete covenant.  Even if IKON could show a protectable interest, Furnish

5

argues the Second Agreement is unenforceable as an unfair restraint on trade because the restrictions imposed exceed those reasonably necessary to protect its claimed interest and would impose hardship.   Although he admits working for a competitor, Furnish contends he has not competed unfairly and has not otherwise breached the non-compete covenants because his employer, Southwest, had relationships with his customers before Furnish became its employee.   Furnish also asserts the affirmative defense of novation, under which the entire Second Agreement would replace the entire First Agreement.   Furnish contends the terms of the two agreements are in such conflict that they cannot exist together, and therefore, this Court must find novation as a matter of law.

### A.   Novation

Before addressing the parties' arguments with regard to the enforceability of the non-compete covenant, this Court must address the arguments regarding novation, as this affirmative defense could affect the Court's focus in its determination of the enforceability of the non-compete covenant.   While unconventional and remote, Furnish seeks summary judgment on his novation affirmative defense. In his motion for summary judgment, Furnish asserts, in a footnote, that the two agreements are inconsistent with one another, and therefore, the Second Agreement is a novation of the First Agreement as a matter of law.   **Docket no. 32, p. 11, ft. 3.** Furnish specifies the specific provisions he contends are

6

inconsistent. **Id.** In his reply brief, Furnish presents the same arguments in the body of his brief, contending specific provisions of the two agreements are so blatantly inconsistent the Court should infer novation. **Docket no. 41, pp. 2-3.** Furnish states the Second Agreement expands the definition of "IKON customers" and expands the time, geographic area, and scope of activity covered in the non-compete agreement.[1] IKON contends Furnish failed to satisfy his burden of proof on 2 of the 4 elements he must prove for his novation defense: whether the intent of the parties to accept a new agreement and to replace the First Agreement is clear such that reasonable minds could not differ.

Novation is the substitution of a new agreement in place of an existing agreement between the same parties. The novation contract discharges the original obligation and only the new obligation may be enforced. ***Fulcrum Central v. AutoTester, Inc.***, 102 S.W.3d 274, 277 (Tex.App.-Dallas 2003, no pet.). As an affirmative defense to a breach of contract claim, Furnish bears the burden of proof of novation. **Id.** To establish this affirmative defense, Furnish must show: (1) the validity of a previous obligation; (2) an agreement among all parties to accept a new contract; (3) the extinguishment of the previous obligation; and (4) the validity of the new agreement. **Id.** (*citing **Vickery v. Vickery***, 999 S.W.2d 342, 356

---

[1] The challenged provisions all exist within the terms of the non-compete covenant.

(Tex. 1999)).[2]  Before its analysis of these elements, however, a court may infer, as a matter of law, a new agreement is a novation of an earlier agreement when the new agreement is so inconsistent with the earlier agreement the two agreements cannot exist together.  ***CTTI Priesmeyer, Inc. v. K & O Ltd. P'ship***, 164 S.W.3d 675, 681 (Tex.App.-Austin 2005, no pet.); ***Fulcrum Central***, 102 S.W.3d at 277; ***Scalise v. McCallum***, 700 S.W.2d 682, 684 (Tex.App.-Dallas 1985, writ ref'd n.r.e.).  In this event, the inconsistency must be more than simple nonuniformity, but must amount to a literal conflict in that the two provisions cannot continue in effect at the same time.  ***See e.g. Chastain v. Cooper & Reed***, 257 S.W.2d 422, 424 (Tex. 1953); ***Scalise***, 700 S.W.2d at 684.

In the absence of inconsistent provisions upon which a Court must infer novation as a matter of law, "a second contract will operate as a novation of a first contract only when the parties to both contracts intend and agree that the obligations of the second shall be substituted for and operate as a discharge of the obligations of the first."  ***Chastain***, 257 S.W.2d at 424.  Thus, whether a subsequent agreement works as a novation of the first is a question of intent.  ***Allstate Ins. Co. v. Clarke***, 471 S.W.2d 901, 907 (Tex.Civ.App.-Houston [1st Dist.] 1971, writ ref'd n.r.e.)

---

[2]  The parties do not dispute or raise argument with regard to the first element.

(citations omitted).  In the absence of express agreement, whether a new contract operates as a novation of an earlier contract is "usually a question of fact, and can only become a question of law when the state of the evidence is such that reasonable minds cannot differ as to its effect."  *Fulcrum Central*, 102 S.W.3d at 277-278; *Chastain*, 257 S.W.2d at 424.  In this event, the intent must be clear, as novation is never presumed.  *Fulcrum Central*, 102 S.W.3d at 277.

Thus, if, on summary judgment, the Court finds an employee has shown adequate basis to infer novation as a matter of law, it must grant summary judgment on this affirmative defense.  If the Court finds inference of novation is not warranted, it must analyze the four elements of novation to determine if undisputed summary judgment evidence establishes them conclusively.  If not, the Court must deny summary judgment on the novation defense, as the question of intent is a fact question for the jury.  *See id.*

Accordingly, before this Court addresses the elements of the novation defense, it must determine whether any inconsistent provisions exist to warrant inference of novation as a matter of law.  Review and comparison of the specified provisions in the First and Second Agreements reveals they are not so inconsistent that they cannot continue in effect at the same time.  First, the Second Agreement changes the definition of "IKON customers" from those the Account Manager actually dealt with, to any customer or

prospective customer he had any contact with.  This is simply an expansion of the definition; the two provisions are not directly contradictory such that they cannot exist together.

Similarly, the Second Agreement expands the geographic area covered within the non-compete covenant from Bexar County to "[a]ll fifty (50) states which comprise the United States".  It expanded the scope of activity covered by the non-compete covenant from "commercial copying and commercial imaging" to a wide range of activity, such as selling, servicing, or leasing a wide array of office equipment, or performing any service in the field of document reproduction or imaging including "development and implementation of additional business segments ... and the growth through acquisitions of entities engaged in any and all of the aforementioned businesses." Finally, the Second Agreement expanded the time limit of the non-compete covenant from one year after termination of employment to include a tolling provision extending the non-compete covenant's restrictions "for the amount of time the violation continues."

These expansions of the coverage of the non-compete covenant are simply that, expansions of pertinent definitions and restrictions, not direct contradictions of those definitions and restrictions in the previous agreement.  As such, the expansion of definitions and restrictions are not so contradictory that the two covenants cannot exist together.  For these reasons, the Court

finds the Second Agreement does not contain blatantly inconsistent provisions to warrant inference of novation of the First Agreement as a matter of law.  With this finding, the Court must determine whether Furnish presents sufficient summary judgment evidence on the four elements of novation such that no genuine issue of material fact exists whether the Second Agreement was a novation of the First Agreement.

IKON contends "the Second Agreement supplements the prohibitions in the [First] Agreement by adding new and separate obligations."  As a supplement, IKON contends the Second Agreement only adds new and wider restrictions, and Furnish could comply with both sets of obligations.  Based upon its contention the Second Agreement was a supplement to the First Agreement, not a replacement, IKON contends the summary judgment evidence presents a genuine issue of material fact on the elements Furnish must prove to establish novation.

The summary judgment evidence consisting of the two agreements shows a genuine issue of material fact exists regarding the intent of the parties to effect a novation.  While Furnish asserts it was his intent that the Second Agreement took the place of the First Agreement, the Second Agreement states, "[t]his Agreement and the prohibitions contained herein shall supplement, and be in addition to, any other agreement with respect to the subject matter hereof."  **Docket no. 32, tab 4, par. 18.**  Given this provision and the effect

of the provisions expanding certain definitions and restrictions, the state of the evidence is such that reasonable minds could differ as to the effect of the Second Agreement.  The intent of the parties is not clear.  Because reasonable minds could differ as to the effect of the Second Agreement, a genuine issue of material fact exists on the issue whether the Second Agreement was a novation of the First.  Thus, this Court may not award summary judgment in Furnish's favor on the novation defense as it is a question of fact to be determined by a jury.  *See CTTI*, 164 S.W.3d at 681; *Fulcrum Central*, 102 S.W.3d at 277.  Furnish's motion for summary judgment on his affirmative defense of novation, should, therefore, be **DENIED**.

**B.   Separation of First and Second Agreements**

Given this determination that a genuine issue of material fact exists on the issue whether the Second Agreement was a novation of the First Agreement, and IKON's arguments that the Second Agreement was a supplement to the First Agreement, this Court must also address the viability of IKON's assertion of a separate and distinct cause of action for breach of the non-compete covenant under each separate agreement.  IKON asserts a cause of action for breach of the non-compete covenant under the First Agreement and also asserts a separate cause of action for breach of the non-compete covenant under the Second Agreement.  This framework is

12

inconsistent with IKON's assertion that the Second Agreement is merely a supplement to the First Agreement.

As a supplement, the Second Agreement would act to add additional or lacking terms, but would exist in conjunction with the First Agreement.  *See* **Black's Law Dictionary**, 1480 (8th ed. 1999). If, as IKON asserts, the Second Agreement is a supplement to the First Agreement; the two actually exist together as one document, one contract.  They cannot exist separately and distinctly from one another.  Because, as IKON asserts, the two exist together as one contract, IKON cannot assert separate and distinct causes of action for breach of the non-compete covenant in each writing.  On the other hand, if the jury were to find the Second Agreement is a novation of the First Agreement, not a supplement, this finding would extinguish the First Agreement altogether, thus extinguishing any separate cause of action for breach of the non-compete covenant contained therein.

Therefore, under either perception of the Second Agreement, whether it exists as a supplement to the First Agreement or as a novation, IKON cannot assert a separate cause of action for breach of the non-compete covenants in both agreements.   IKON may only assert one cause of action for breach of the non-compete covenant, either as it exists in the Second Agreement in the event of a finding of novation, or as the non-compete covenant in the Second Agreement exists as a supplement to that in the First Agreement.

Thus, this Court finds the framework of IKON's assertion of two causes of action for breach of the non-compete agreements is not possible under these facts. Given this factual impossibility with regard to the framing of the causes of action, this Court will proceed as if IKON asserts one cause of action for breach of the non-compete covenant. Also, although this Court finds a jury issue exists on the issue of novation, it will continue with its analysis of the remaining substantive arguments on the asserted cause of action for violation of the non-compete covenant. In the event the uncertainty of the outcome on the novation defense pertains to the discussion, the Court will address it at the appropriate time.

### C.  Enforceability of Non-Compete Covenant

Employment contracts that contain a covenant not to compete are disfavored in Texas, and these covenants are presumptively unenforceable as contrary to public policy because they could function as an unfair restraint of trade. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681-682 (Tex. 1990); *Butts Retail, Inc. v. Diversifoods, Inc.*, 840 S.W.2d 770, 773 (Tex.App.-Beaumont 1992, pet. denied). To protect against such impediments on trade, the Texas Legislature passed the Covenants Not to Compete Act (CNCA), which outlines required criteria to overcome this presumption of unenforceability. TEX. BUS. & COM CODE ANN. §§ 15.50-15.52; *see Light v. Centel Cellular Co. of Tx.*, 883 S.W.2d 642, 643-644 (Tex. 1994). Under the CNCA, to prove the non-compete covenant is enforceable,

14

the employer must show: (1) the employer and employee entered into a personal services agreement, separate from a covenant not to compete; (2) the covenant is ancillary to or part of the otherwise enforceable personal services agreement at the time the agreement was made; (3) the covenant's limitations were reasonable as to time, geographic area, and scope of activity to be restrained; (4) the covenant's limitations do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the employer. **Tex. Bus. & Com Code Ann.** § **15.50(a); *Light***, 883 S.W.2d at 644; ***Butler v. Arrow Mirror & Glass, Inc.***, 51 S.W.3d 787, 792 (Tx. App.-Houston [1st Dist.] 2001, no pet.).  In consideration of the requirements of Section 15.50 of the CNCA, to prove breach of a non-compete covenant, the employer must establish the four prongs of enforceability and must also show the employee breached the covenant not to compete.[3] ***See Butler***, 51 S.W.3d at 792; ***see also*** **O'Connor's Texas Causes of Action**, Chap. 5-I, § 1.1, § 2.5 (2007).

The issue whether a covenant not to compete is enforceable is a question of law.  ***Hardy v. Mann Frankfort Stein & Lipp Advisors, Inc.***, No. 01-05-01080-CV, 2007 WL 1299661, at *6 (Tx. App.-Houston

---

[3]   While the burden of proof on enforceability is placed upon the employer, when unenforceability is raised as an affirmative defense, the burden of proof shifts to the employee to negate the statutory elements of enforceability.  Therefore, a non-compete covenant is presumptively invalid; however, the employer may prove it to be valid by satisfying the 4 statutory elements.  But, if the employee raises unenforceability as an affirmative defense, the employee must negate the 4 statutory elements of enforceability. ***See* Tx. Bus. & Com. Code Ann.** § **15.51.**

[1st Dist.] 2007, pet. filed)(*citing* **Light**, 883 S.W.2d at 644);

**Butler**, 51 S.W.3d at 792.  Because enforceability is a question of law, the issue must be determined by this Court on summary judgment.  Should the Court determine the subject non-compete covenant is not enforceable, then summary judgment must be granted on this issue.  However, if the subject covenant is enforceable, then the question whether it was violated (prong 5) is a question of fact to be determined by summary judgment evidence or by jury trial.

### 1.   Business Interest

Furnish's primary summary judgment arguments relate to the second prong of this inquiry of enforceability: whether the covenant is ancillary to or part of an otherwise enforceable personal services agreement at the time the agreement was made.  To satisfy the second prong of this inquiry, the employer must show (1) the consideration given by the employer in the otherwise enforceable agreement gives rise to the employer's interest in restraining the employee from competing; and (2) the covenant is designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement.  **Evans World Travel, Inc. v. Adams**, 978 S.W.2d 225, 230 (Tex. App.-Texarkana 1998, no pet.).  In this inquiry, under the first criteria, the business interest protected by the covenant must be worthy of protection.  **Light**, 883 S.W.2d at 647.  Business goodwill, confidential or proprietary

16

information, and trade secrets are examples of business interests that are worthy of protection by a covenant not to compete. *DeSantis*, 793 S.W.2d at 682; *West v. Pennyrich Int'l*, 447 S.W.2d 771, 773 (Tex. App.-Waco 1969, no writ).  Interests that are not protectable under a covenant not to compete are general skills and knowledge that employees develop through the course of employment, personal goodwill, and sources of professional referrals.  *See Evans World Travel, Inc.*, 978 S.W.2d at 231; *Philip H. Hunke, Inc. v. Wilcox*, 815 S.W.2d 855, 858 (Tex. App.-Corpus Christi 1991, writ denied); *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168, 171-172 (Tex. 1987).

### a.    Protectability

Furnish contends the non-compete covenant is an unreasonable restraint as a matter of law because IKON holds no business interest warranting such protection.  Furnish contends he received no meaningful training; he did not physically remove any information given to him by IKON or used by him during his employment; the information IKON seeks to protect is not a protectable trade secret, and, IKON cannot claim ownership in the knowledge, skills, and goodwill Furnish gained during his employment.  Furnish contends he developed only a personal goodwill with his clients, and he developed and utilized only general skills and knowledge while employed with IKON.  Furnish contends these interests are not protectable by the non-compete agreement.

17

Review of the applicable agreements reveals the business interest IKON seeks to protect in the non-compete covenant is its database of customer lists, customer information, pricing strategies, and goodwill. **Docket no. 39, exh. B, pp. 4-5; exh. C, pp. 1-2.** To begin, in presenting his arguments with regard to this cause of action, Furnish mixes argument related to the issue whether the business interest IKON seeks to protect is a trade secret with the issue this Court must address here, i.e. whether the business interest IKON seeks to protect by the non-compete covenant is, indeed, worthy of such protection. Though closely related, and many times based upon the same matter, the two inquiries focus on different criteria. The standard to find a trade secret is much higher than that to find a business interest protectable by a non-compete covenant. Therefore, legitimate interests protectable by a non-compete agreement may include trade secrets, as well as otherwise confidential and proprietary information. *See DeSantis*, 793 S.W.2d at 682.

Thus, Furnish's arguments with regard to whether the collective customer information IKON seeks to protect by the non-compete covenant constitutes a trade secret is irrelevant to this Court's determination here. To determine whether summary judgment is proper on this cause of action for violation of a covenant not to compete, this Court must only determine whether the collective customer information IKON sought to protect by the non-compete

18

covenant is protectable confidential or proprietary information. In making this determination, it is also immaterial whether Furnish physically removed the information.  This Court's focus lies on the issue whether the information IKON seeks to protect with the non-compete covenant is confidential or proprietary. ***See DeSantis***, 793 S.W.2d at 682.  If so, the information is consequently worthy of the protection of a reasonable non-compete covenant.

The summary judgment evidence presented by the parties shows the customer information IKON seeks to protect in its non-compete agreement is confidential and proprietary, and therefore, worthy of protection of a reasonable non-compete agreement.  IKON regards this customer information, which includes contact names, needs, transaction history, profit margin, and pricing to be of great value in its ongoing relationships with its customer base. **Docket no. 39, tab A, Janisch affidavit, pars. 17-22; tab D, Smith affidavit, pars. 10-16.**  Because it regards this customer information with such importance, IKON took significant effort to protect its confidentiality. ***Id; see also* Docket no. 32, tab 3, Wood Depo., pp. 50-53.**  IKON presents summary judgment evidence these efforts include requiring employees to sign non-compete agreements and agreements to keep the information confidential, periodic IKON Code of Ethics training, password protection and encryption of information, and limitation of access to certain programs and data. **Docket no. 39, tab A, pars. 22-26; tab D, pars.**

**16-19.**   Furnish also admits the information is confidential. **Docket no. 39, tab F, pp. 60-61, 116-117.**   Because this summary judgment evidence shows the customer information IKON sought to protect by the non-compete covenant is confidential and proprietary, IKON held a protectable business interest.   *See DeSantis*, 793 S.W.2d at 682; *West*, 447 S.W.2d at 773.   Therefore, Furnish's first argument that the non-compete agreement is not enforceable must fail.

### b. Nature of Goodwill/Business Interest

Next, the parties engage in considerable argument pertaining to the issue whether the goodwill generated by Furnish's contact with his clients constituted protectable business goodwill or non-protected personal goodwill.   IKON contends Furnish generated significant business goodwill in his dealings with its customers, and this goodwill is protectable through the non-compete covenant. Furnish contends he utilized only his general knowledge, skills and general experience acquired during his employment with IKON when he went to work for Southwest.

IKON presents evidence that while employed with IKON Furnish solicited and developed client relations for IKON's benefit using IKON's market recognition and reputation.   Furnish gained clients during the time he was an IKON employee and thereby gained their trust and patronage for IKON's services.   Furnish maintained these client accounts as an "agent-employee" for IKON's benefit, and as

20

the "face" of IKON, became identified by the customer with the product being sold.  ***See* Docket no. 39, tab A, Janisch aff., pars. 7-10; tab D, Smith aff. pars. 4,9.**

This evidence shows Furnish developed business goodwill for the benefit of IKON because he fostered IKON's reputation and trustworthiness in these relationships.  Furnish utilized this trust to develop a familiarity and trust in IKON, not just in himself as a person.  So, while Furnish may have generated personal goodwill in his relations with his client base, he also developed business goodwill for IKON's benefit.  Because some goodwill generated by Furnish's contact with his clients constituted business goodwill protectable under a non-compete agreement, Furnish's second argument that IKON possessed no business interest worthy of protection must also fail.

Therefore, Furnish's argument that IKON holds no business interest worthy of protection in a non-compete agreement must fail. Even accepting as true Furnish's arguments that he did not receive meaningful training, did not physically remove any information, and he can use his general knowledge gained during his employment to compete with IKON, given this finding that IKON's collective customer information is worthy of protection as confidential, Furnish's arguments on this basis that the non-compete agreement is an unreasonable restraint on trade must fail.

### 2.    Reasonableness of Restrictions

Next, Furnish argues the non-compete covenant fails under the third statutory element regarding the enforceability of a non-compete covenant: the covenant's limitations were reasonable as to time and geographic area, and scope of activity to be restrained. Under the third statutory prong of enforceability of a non-compete covenant, an employer must show the covenant's restraints on time, geographic area, and scope of activity are reasonable. *See* TEX. BUS. & COM CODE ANN. § 15.50(a); *Butler*, 51 S.W.3d at 792; *Light*, 883 S.W.2d at 644.  Determination whether a non-competition agreement is "reasonable" under the third statutory element is a question of law for the Court. *Butler*, 51 S.W.3d at 792.

With regard to the third statutory element, Furnish contends the non-compete covenant's restrictions of time and geographic area exceed those reasonably necessary to protect the claimed interest, and for these reasons, it is not enforceable.  Specifically, Furnish argues the time period of restraint is unreasonable because it is automatically tolled for the amount of time any violation of the non-compete agreement occurs.  Furnish argues the named geographic area is unreasonable because it restricts him from competing in areas outside the territory in which he worked during his employment.

### a.   Time: Tolling Provision

The non-compete covenant contained in the First and Second Agreement both state the restrictive terms extend "for a period of twelve calendar months after termination of employment." **Docket no. 32, exh. 2, p.3, par. 2.1; Docket no. 32, exh. 4, p. 2, par.8.** Later, the non-compete covenant in the Second Agreement modifies this temporal limitation, stating, "the period of restraint ... shall be automatically tolled for the amount of time the violation continues." **Docket no. 32, exh. 4, p.4, par. 20.** In its complaint, IKON seeks compensatory, punitive, and liquidated damages for Furnish's alleged violations of the non-compete covenant that occurred during and beyond the initial 12-month restraint period.

Furnish argues the tolling provision in paragraph 20 of the Second Agreement establishes an unreasonable extension of the length of time the non-compete covenant remains in effect (restraint period).  Because the provision extends the restraint period indefinitely, Furnish contends it is inherently unreasonable.  IKON contends the duration of the non-compete provision is not indefinite, but instead, it admits the duration "is limited to 12 months from the date of Furnish's departure from IKON."  IKON contends "[t]he tolling provision does not *lengthen* the temporal limitations of Furnish's contractual obligations but, rather, enables IKON to enjoy the *same* 12-month benefit of its

23

bargain to which it is entitled under the Agreement in the event of a breach." Because it is entitled to some 12-month period of non-violative conduct, IKON contends the tolling provision acts to toll the restraint period while any violative conduct occurs, and then the restraint period is enacted upon its cessation.

The pending issue with regard to whether the Second Agreement was a novation of the First Agreement, would have no affect on this determination of reasonableness of the time restriction.  If the Second Agreement is a supplement, the two writings would exist as one contract, and therefore, the Court must view the time restriction and tolling provision as they appear in the Second Agreement as an addition to, or expansion of, the corresponding time-limit provision as it appears in the First Agreement.  If the Second Agreement is a novation of the First Agreement, the Court would only base its determination of reasonableness on the time restriction and tolling provision as they appear in the Second Agreement.  Thus, under either perception of the Second Agreement, the reasonableness conclusion is the same.

The Court finds initially, in paragraph two of the Second Agreement and as it appears in the First Agreement, the non-compete covenant specifies a reasonable restraint period of twelve months after termination of employment.  The parties do not dispute this restraint period is reasonable under Texas common law, which

supports a restraint period from three to five years.[4]   However, the parties' arguments with regard to the tolling provision change the focus of the reasonableness inquiry from the *duration* of the restraint period to *the time of its commencement*.   In this regard, the Court finds the initial time restraint as it is expanded by the tolling provision in the Second Agreement acts as an unreasonable restraint.

By postponing enactment of the initial restraint period for as long as any violation of the non-compete covenant continues, the tolling provision in Paragraph 20 of the Second Agreement allows the restraint period to begin at an indefinite time.   On its face, this clause creates an unreasonable restraint because it creates an indefinite period in which Furnish's actions are restrained and it creates an indefinite time at which this restraint will begin. While Furnish's actions may be reasonably restrained for only one year, under the tolling provision this one year could effectively begin several years after Furnish's termination from IKON and could effectively restrain his actions for an indefinite and ambiguous period.   A clause that is based in such indefiniteness cannot be upheld as a reasonable restraint on trade.   ***See Gen'l Devices v.***

---

[4]   Generally, time restrictions up to five years have been upheld. ***See e.g., Stone v. Griffin Comms. & Sec. Sys., Inc.***, 53 S.W.3d 687, 696 (Tex. App.-Tyler 2001, no pet.)(supporting citations omitted); ***Chandler v. Mastercraft Dental Corp.***, 739 S.W.2d 460, 464-465 (Tex. App.-Ft. Worth 1987, writ denied)(five-year restriction upheld); ***AMF Tuboscope v. McBryde***, 618 S.W.2d 105, 108 (Tex.Civ.App.-Corpus Christi 1981, no writ)(two-year restriction upheld).

*Bacon*, 888 S.W.2d 497, 504 (Tx. App.-Dallas 1994, writ denied)(a covenant that is not sufficient as to time, or that might exist indefinitely is unreasonable); *ALW Mktg. Corp. v. McKinney*, 421 S.E.2d 565, 568 (Ga. App. 1992)(tolling provision that potentially extends the duration of the covenant without time limit renders it unreasonable and unenforceable on its face). Thus, this Court must find it is not reasonable to extend the restraint period to begin at an indefinite and ambiguous time.

Based upon a finding that the time restriction contained in the non-compete covenant is unreasonable, this Court must find the non-compete covenant, consisting of that contained in the First as supplemented by the Second Agreement, or as it appears in the Second Agreement, alone, is not enforceable as to this specific provision.  Given this finding, Furnish is entitled to summary judgment on IKON's cause of action for breach of the non-compete covenant based upon its lack of enforceability.  However, instead of invalidating an otherwise unenforceable non-compete covenant, a Court must reform any unreasonable restrictions if it also finds the restrictions impose greater restraint than necessary to protect a valid business interest (prong 4 of Furnish's burden of proof). *See* TEX. BUS. & COM CODE ANN. § 15.51(c).  Thus, this Court must postpone its determination whether the non-compete covenant as it exists under these facts should be reformed until it addresses the parties' arguments with regard to the fourth prong of the

enforceability test: whether the restrictions impose greater restraint than necessary to protect a valid business interest.

### b.  Geographic Area

The issue whether a non-compete covenant is reasonable regarding geographic area depends upon the nature and extent of the employer's business and the degree of the employee's involvement. *Allan J. Richardson & Assocs., Inc. v. Andrews*, 718 S.W.2d 833, 835 (Tex.App.-Houston [14th Dist.] 1986, no writ).  The covenant must bear some relationship to the activities of the employee and the employee's territory.  *Id.; Butler*, 51 S.W.3d at 793.  It is presumed a geographic limitation which covers only the area where the employee worked during his employment is reasonable.  *Butler*, 51 S.W.3d at 793.  On the other hand, a geographic limitation that is indefinite or unlimited is unreasonable.  *See Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 663 (Tex. 1990). Thus, a covenant not to compete with a broad geographical scope is unenforceable, particularly when no evidence establishes the employee actually worked in all areas covered by the covenant. *Butler*, 51 S.W.3d at 793-794; *Evan's World Travel, Inc.*, 978 S.W.2d at 233.

The parties do not dispute that Furnish's customer base and territory while employed by IKON consisted of law firms in the San Antonio area, or, at most, Bexar County.  *See Original Complaint*, **docket no. 1, par. 6,38; docket no. 32, Furnish's Appendix, exh. 1,**

**Furnish depo. pp. 1,12.**   The summary judgment evidence presented also shows Furnish's customer base was limited to the geographic area of San Antonio.  **Docket no. 32, exh. 1, p. 12.**  Furnish did not pursue customers outside this geographic area, and his customer base was limited to law firms.  **Docket no. 32, exh. 1, Furnish depo. pp. 3,12.**

The pending issue with regard to whether the Second Agreement was a novation of the First Agreement, would have no affect on this determination of reasonableness of the geographic area restriction. If the Second Agreement is a supplement, the two writings would exist as one contract, and therefore, the Court must view the geographic area restriction as it appears in the Second Agreement as an addition to, or expansion of, the corresponding provision as it appears in the First Agreement.  If the Second Agreement is a novation of the First Agreement, the Court would only base its determination of reasonableness on the geographic area restriction as it appears in the Second Agreement.   Thus, under either perception of the Second Agreement, the reasonableness conclusion is the same.

The geographic area restriction in the First Agreement limits Furnish's activities "to the counties or counties in which [he] worked for [IKON during the twelve (12) months immediately preceding termination...." **Docket no. 32, exh. 2, p.3, par. 2.1.** The geographic area restriction contained in the Second Agreement

expands and adds to this restriction to cover the geographic area of "[a]ll fifty (50) states which comprise the United States." **Docket no. 32, exh. 4, p.2, par. 9.** Thus, if a supplement, the two writings, as they exist as one contract limit Furnish's activities in all fifty states.  If the Second Agreement is a novation, it also limits Furnish's activities in all fifty states.

This Court finds the geographic area restriction under either interpretation of the Second Agreement is blatantly unreasonable as a matter of law.  Although IKON might be a national firm that conducts business all over the United States, the focus of determination of reasonability of the non-compete covenant is the territory where Furnish worked during his employment.  Because it is undisputed that Furnish held clients only in San Antonio, worked only in San Antonio and pursued clients only in San Antonio, it is presumed this area is a reasonable limitation of any non-compete agreement.  *See* **Butler**, 51 S.W.3d at 793; *Allan J. Richardson & Assocs.,* 718 S.W.2d at 835.  While it may still be reasonable to expand this geographic limitation beyond Furnish's specified territory, the undisputed facts in this case show such an expansion to include all fifty states is unreasonable because no evidence established Furnish worked in all fifty states.

The evidence further shows the business interest IKON sought to protect through the non-compete agreement was its customer information and client base in the San Antonio area, only, and

29

therefore, any extension of the protected geographic area would exceed that necessary to achieve the sought-after protection. Even though Furnish may have been privy to confidential information that pertained to IKON's national accounts, his client base and territory consisted only of San Antonio. IKON has not presented any evidence that Furnish sought to expand his client base or territory to any of its national accounts, while he has been employed at Southwest. This Court finds that even if IKON held national accounts and Furnish was privy to this customer information, it is not reasonable under the facts in this case to expand the geographic area restriction for the non-compete agreement to all fifty states.

Based upon a finding the geographic area restriction contained in the non-compete covenant is unreasonable, this Court must find the non-compete covenant, consisting of that contained in the First as supplemented by the Second Agreement, or as it appears in the Second Agreement, alone, is not enforceable as to this specific geographic area restraint. Given this finding, Furnish is entitled to summary judgment on IKON's cause of action for breach of the non-compete covenant based upon its lack of enforceability. However, instead of invalidating an otherwise unenforceable non-compete agreement, Section 15.51(c) requires the Court to reform an otherwise unenforceable non-compete covenant if it also finds the restrictions impose greater restraint than necessary to protect its

30

goodwill (prong 4 of Furnish's burden of proof).  *See* Tex. Bus. & Com Code Ann. § 15.51(c).    Thus, this Court must postpone its determination whether the non-compete covenant as it exists under these facts should be reformed until it addresses the parties' arguments with regard to the fourth prong of the enforceability test: whether the restrictions impose greater restraint than necessary to protect a valid business interest.

IKON attempts to argue the non-compete covenant's enforceability as it relates to the geographic area is not at issue because it seeks to enforce the agreement limited only to the area in which Furnish was assigned within the 2 year period prior to his termination.   However, IKON's limited enforcement of the non-compete covenant does not change or void the prerequisite legal finding that the covenant, itself, is unreasonable and unenforceable.  This Court must first determine the reasonableness of the non-compete covenant, and then, if it is reasonable, look to its enforcement.   If IKON chooses to limit its enforcement of an otherwise legally sound non-compete covenant, it may do so. However, it must, first, have a legally sound and enforceable non-compete covenant.   IKON does not get to limit its enforcement of the covenant to avoid its lack of reasonableness or to avoid reformation.

### c.   Scope of Activity

In his reply to IKON's response to his motion for summary judgment, Furnish presents vague and ill-formed argument to challenge the reasonableness of the scope of activity prohibited by the non-compete covenant as it appears in the Second Agreement. ***See* Docket no. 41, reply brief, p. 4**.   Furnish presents cursory argument the provision unreasonably prohibits him from "working in *any capacity* for an enterprise that competes with 'the Company's Business' in any respect" and unreasonably restricts his activity beyond that which he performed for IKON, to include activity such as, "selling or leasing a wide array of office equipment, telephony, and office networking systems."   ***Id.*** at p. 3.   The evidence cited by Furnish to support this contention is incomplete.[5]   Because Furnish presents vague argument for the first time in his reply brief and presents incomplete supporting evidence, this Court will not address this argument.

Also, as part of this reasonableness analysis, the parties dispute whether the liquidated damages clause is reasonable.   The parties frame these arguments as part of the analysis to determine whether the non-compete covenant is reasonable.   However, the issues of the reasonableness of the restrictions and the appropriateness of liquidated damages are separate and distinct.

---

[5]    Furnish cites "Tab 3, pp. 49-50".   However, only page 50 is included, and it does not support this argument.

Because the parties submit considerable argument on these damages issues, the Court feels compelled to address them; however, not within the context of determination whether the restraint period is reasonable.  The Court will address all the parties' arguments on the propriety of damages following final determination of the arguments pertaining to the reasonableness, and hence enforceability of, the non-compete covenants.

### 3.   Hardship Imposed

Furnish argues the non-compete covenant fails under the fourth statutory element regarding the enforceability of a non-compete covenant: the covenant's limitations in time, area, and scope did not impose a greater restraint than is necessary to protect IKON's alleged goodwill or other business interest.  Furnish argues the covenant is not enforceable because the hardship imposed upon him and the injury to the public outweighs any protection afforded by the agreement.

Under the fourth statutory prong of enforceability of a non-compete covenant, an employer must show the covenant's restraints on time, geographic area, and scope of activity did not impose a greater restraint than was necessary to protect the employer's legitimate business interest.  **TEX. BUS. & COM CODE § 15.50(a)**; ***Anderson Chem. Co. v. Green***, 66 S.W.3d 434, 437 (Tex.App.-Amarillo 2001, no. pet.).  In such inquiry, if the Court finds the covenant is ancillary to a separate, enforceable agreement but imposes a

greater restraint than necessary, the covenant, while unreasonable and unenforceable, is not necessarily invalidated. Instead, the Court must reform the covenant to make the restraint reasonable. TEX. BUS. & COM CODE § 15.51(c). However, if the Court finds a non-compete covenant is not necessary to protect the employer's legitimate business interest, the covenant cannot be reformed. *Daytona Group of Tx. v. Smith*, 800 S.W.2d 285, 290 (Tex. App-Corpus Christi 1990, writ denied); *DeSantis*, 793 S.W.2d at 685. If the Court finds the non-compete covenant's restraints on time, geographic area, and scope of activity did not impose a greater restraint than was necessary to protect the employer's legitimate business interest, the Court must find it to be enforceable if it also finds the remaining three statutory elements. *See* TEX. BUS.& COM. CODE. § 15.50(c).

In light of this Court's previous findings that IKON holds a legitimate business interest worthy of the protection of a non-compete covenant, this Court also finds the non-compete covenant entered by the parties is necessary to protect IKON's business interests. Further, also in light of the Court's findings with regard to the lack of reasonableness of the time and geographic area restrictions within the non-compete covenant, the Court also finds these restrictions impose a greater restraint than necessary to protect IKON's asserted interests. The tolling restriction imposes a restraint greater than necessary to protect IKON's

34

business interest because it creates an unlimited and undefined restraint period, beyond the time negotiated. Any restraint of activity for an indefinite time is not reasonable, and consequently, imposes a greater restraint than necessary to protect a business interest. The geographic area restriction is greater than necessary because IKON's business interest protected by the non-compete agreement is only effective and valid in the San Antonio/Bexar County area. Therefore, any restraint on Furnish's conduct outside this geographic area is not related to this business interest, and consequently, imposes a greater restraint than necessary. For these reasons, this Court finds the covenant's limitations in time and geographic area impose a greater restraint than is necessary to protect IKON's goodwill or other business interest.

### 4.   Reformation

Upon finding a non-compete covenant contains restrictions that are not reasonable and these restrictions impose a greater restraint than necessary, the Court must reform the non-compete covenant to make these restraints reasonable. **TEX. BUS. & COM CODE ANN. § 15.51(c).**

> If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee, the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity

35

to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee and enforce the covenant as reformed, except that the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief.

TEX. BUS. & COM CODE ANN. § 15.51(c). Therefore, instead of invalidating a non-compete covenant that contains unreasonable, and unenforceable, restrictions, a Court must reform the non-compete covenant, revising the unreasonable provisions to those which are reasonable under the circumstances.[6]  *Id.*; *Butler*, 51 S.W.3d at 794; *Allan J. Richardson & Assocs., Inc.*, 718 S.W.2d at 835-36. However, under Section 15.51(c), the effect of reformation in this case would deprive IKON of damages for Furnish's alleged violation of the covenant not to compete and limit its remedy to injunctive relief, only.  Under the unique circumstances of this case, the Court finds such a result is unjustified.

---

[6]   In this case, neither party specifically pleads or requests reformation.  Some case law exists which supports the proposition that a party waives its right to reformation if reformation is not requested in the pleadings.  *See Hardy v. Mann Frankfort Stein & Lipp Advisors, Inc.*, No. 01-05-010800-CV, 2007 WL 1299661 at *13 (Tex. App.-Houston [1st Dist.] 2007, no pet.); *John R. Jay & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85-86 (Tex. App.-Houston [14th Dist.] 1996, writ denied).  However, these cases cite as precedential support caselaw that has been superceded by statute amendment.  Section 15.51(c) was amended in 1993 to remove the requirement that a party request reformation and to require a court to reform a covenant upon finding it unreasonable and the restraints are greater than necessary to protect a valid business interest.  *See* TX. BUS. & COM. CODE ANN. § 15.51(c)(Historical and Statutory Notes).  Also, a determining factor in these cases is the parties' failure to request injunctive relief.  Thus, under the facts in this case, and in light of the mandatory statutory language in Section 15.51(c), the Court concludes reformation is required upon the requisite findings.

Normally, when a court determines a provision in a non-compete agreement is unreasonable and must be reformed, the Court is required to create a valid provision that did not exist before. For that reason, it would be unfair to the employee to pay damages for violating conduct he could not have known was improper.  This reasoning was succinctly set forth by the Texas Supreme Court in *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 952-53 (1960),

> If the agreement is not reasonably limited as to either time or space, the parties are not definitely apprised of their respective rights and duties until a court of equity has carved out an area or a period that is reasonable under the circumstances. It is one thing for the court to do this as an incident to the granting of injunctive relief which operates prospectively and an entirely different matter to reform the contract for the purpose of giving the employer a cause of action for damages. In the latter situation the defendant would be required to respond in damages for what he had done at a time when there was no way of determining, except possibly by an action for declaratory judgment, where or for how long he was legally obligated to refrain from competing. We hold that an action for damages resulting from competition occurring before a reasonable territory and period have been prescribed by a court of competent jurisdiction must stand or fall on the contract as written.

Thus, if the agreement is not enforceable in accordance with its terms because either the time or the area stipulated therein is unreasonable, the employer may obtain injunctive relief but will not be awarded a money recovery for anything the employee may have done prior to a judicial declaration of the rights and obligations

37

arising from the contract.  ***See Juliette Fowler Homes, Inc.***, 793 S.W.2d at 663.

In this case, the First Agreement contains a one-year restriction and establishes a geographical limitation to Bexar County.  Furnish does not dispute that those provisions are valid and reasonable.  The Second Agreement contained the unreasonable time and geographical restrictions.  The Court finds that reformation can be accomplished in this case by simply excising the unreasonable provisions.  There is no need to create reasonable time and geographical provisions to replace them, as such provisions already exist in the First Agreement.  Because Furnish was always on notice of those valid and reasonable limitations, IKON should not be precluded from recovering damages if it is able to prove to a jury that Furnish violated the covenant not to compete and that it suffered damages as a result.

However, the unsettled issue of novation could still impact IKON's cause of action against Furnish for violating the covenant not to compete.  IKON created this uncertainty by requiring Furnish to sign the Second Agreement, which contained unreasonable time and geographical limitations.  As noted above, the summary judgment evidence shows a genuine issue of material fact exists regarding the intent of the parties to effect a novation.  Should the jury determine the Second Agreement is a supplement to the First Agreement, then the Court must remove the unreasonable time and

geographic restrictions from the Second Agreement, leaving the reasonable restrictions in the First Agreement intact. Because the Court construes this excision is not the type of reformation as anticipated in Section 15.51(c), the Court further proposes IKON can recover damages under the original valid time and geographical restrictions in this event. However, should the jury find the Second Agreement is a novation, then the Second Agreement, with its unreasonable time and geographical provisions, takes the place of the First Agreement. In that case, the First Agreement, with its valid time and geographical restrictions, is extinguished, requiring reformation of the Second Agreement by creation of new time and geographic restrictions.[7] If that occurs, IKON will be precluded from recovering damages under the reformed covenant. *See* **Tex. Bus. & Com Code Ann. § 15.51(c);** *see also Emergicare Sys. Corp.*, 942 S.W.2d at 205 (Court entered take-nothing judgment after covenant found to be unreasonable because employer sought only liquidated damages, not injunctive relief); *Butler*, 51 S.W.3d at 796 (money damages for breach prior to reformation precluded;

---

[7]   In this event, given that it is presumed and undisputed that a one-year limitation is reasonable, and the initial restraint period in the Second Agreement limits the time restraint to one year, this Court recommends reformation to limit the restraint period to 12 months following termination of Furnish's employment with IKON and commencing on the date of his termination. The Court should omit paragraph 20, which contains the tolling provision. *See Stone*, 53 S.W.3d at 696; *See* **Docket no. 32, exh. 4, p. 2, pars.8, 20.** Also, given that it is presumed a geographic limitation that covers only the area where the employee worked during his employment is reasonable, and the record contains undisputed evidence this geographic area was limited to Bexar County, this Court recommends reformation to limit Furnish's actions in Bexar County, only. *See Butler*, 51 S.W.3d at 793.

recovery limited to injunctive relief after reformation); **Peat Marwick**, 818 S.W.2d at 388 (reformation precluded award of liquidated damages).

IKON further argues the Second Agreement contains a severance clause requiring any provisions found by the Court to be unreasonable to be severed from the remaining contract, making determination of the novation and reformation issues ineffectual. Ikon's argument fails under the clear language of the severance clause. The severance clause contained in the Second Agreement states, "the invalidity of any term or provision of this Agreement, including any term or provision of paragraphs 7,8,9,10,11,and 12, shall not invalidate or otherwise affect any other term or provision of this Agreement." **Docket no. 32, exh. 4, par. 19.** This severance clause prevents a finding of the invalidity of the whole contract upon a finding that a portion of it is invalid. Its effect is to preserve the integrity of any remaining provisions in the Second Agreement. Therefore, the severance clause has no relevance to determination of the novation issue. Further, whether the Second Agreement is a supplement or a novation, the severance clause has no effect on determination of the necessity of reformation, as it only protects the validity of the remaining portions of the agreement. Also, because this Court finds its modification of the non-compete covenant is not traditional

"reformation", as anticipated in Section 15.51(c), IKON's argument is irrelevant.

### D.   Damages

Without specifically moving for summary judgment on the issue, Furnish argues the liquidated damages clause contained in the First Agreement is not reasonable.  Because it is not a reasonable calculation of damages, Furnish argues the liquidated damages clause contained in the First Agreement, only, should not be enforced.  IKON argues the pertinent liquidated damages clause "represents a reasonable prediction of the just compensation to which IKON is entitled" in the event Furnish breaches the non-compete covenant.  "Rather than requiring IKON to wait indefinitely to determine the full extent of the lost profits it will suffer for many years into the future", IKON argues the liquidated damages clause "provides a formula by which those future lost profits (i.e. IKON's just compensation) may reasonably be calculated."

Whether a contractual provision is an enforceable liquidated damages provision or an unenforceable penalty is a question of law for the court to determine.  ***Phillips v. Phillips***, 820 S.W.2d 785, 788 (Tex. 1991)(supporting cases cited therein).  Thus, even though Furnish does not formally move for summary judgment on the issue, because the parties each present opposing argument and evidence, the Court should determine this question of law at this time.  However, because the opposed liquidated damages clause appears in

the First Agreement, only, determination of the enforce-ability of the liquidated damages clause has no effect until the jury determines the issue of novation.

The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained.  By operation of this rule, a party, generally, should be awarded neither less nor more than his actual damages. **Phillips**, 820 S.W.2d at 788.  While liquidated damages provisions often appear in non-compete covenants, the right of competent parties to make their own bargains is limited.  A party has no right to have a court enforce a stipulation which violates the universal rule that damages are limited to the loss actually sustained.  To be enforceable, a liquidated damages provision must follow the universal rule of damages calculation, and thus, must be a reasonable forecast of just compensation for any harm that could be caused by a breach. **Stewart v. Basey**, 245 S.W.2d 484, 486 (Tex. 1952); **Prof'l Beauty Products, Inc. v. Derington**, 513 S.W.2d 236, 238 (Tex.Civ.App.-El Paso 1974, writ ref'd n.r.e.).  Thus, to protect against stipulation of damages that act as a penalty rather than just compensation, there exists a two-part test to determine the enforceability of a contractual liquidated damages provision: (1) the harm caused by a breach would be impossible or difficult to calculate or estimate, and (2) the amount of liquidated damages called for is a reasonable forecast of just compensation. **Rio**

42

*Grande Valley Sugar Growers*, *Inc. v. Campesi*, 592 S.W.2d 340, 342
n. 2 (Tex. 1979); *Stewart*, 245 S.W.2d 486; *see also Blase Indus.*
*Corp. v. Anorad Corp.*, 442 F.3d 235, 238 (5th Cir. 2006); *Mayhall*
*v. Proskowetz*, 537 S.W.2d 320, 322 (Tex.Civ.App. -Austin 1976, writ
ref'd n.r.e.)(liquidated damage provision in non-compete covenant).

The pertinent liquidated damages provision as it appears in
the First Agreement, in a section titled "Damages for Breach",
states,

> [i]n the event of a breach by Employee, Company shall be
> entitled to the greater of actual compensatory, punitive
> and other damages, or liquidated damages as referenced
> herein. For each customer or account of Company that
> Employee contacts, causes to be contacted, or otherwise
> works with or for in violation of Section 2.1, Employee
> shall pay to Company Liquidated Damages in the amount of
> the average monthly billing by Company to that customer
> or account, times the applicable number of months
> specified in Section 2.1(a)[(12 months)]. The average
> monthly billing shall be the average billing by Company's
> office where Employee worked during the 12 months
> preceding Employee's termination, and the average shall
> be calculated based only on those months in which the
> account was actually billed by Company.

**Docket no. 32, exh. 2, p. 4, par. 2.1(c)**. In the Second Agreement,
the Section titled "Remedies for Breach" contains a completely
different clause. This section omits any entitlement or reference
to, or calculation of, liquidated damages. The section states,

> *Company's Right to Injunction*. Employee acknowledges
> that the Company will have no adequate means of
> protecting its rights under Paragraphs 7,8,9, and 10 of
> this Agreement other than by securing an injunction....
> Accordingly, Employee agrees that the Company is entitled
> to enforce this Agreement by obtaining a temporary,
> preliminary, and/or permanent injunction and any other

43

appropriate equitable relief.... Employee acknowledges
that the Company's recovery of damages will not be an
adequate means to redress a breach of this Agreement.
Nothing contained in this paragraph, however, shall
prohibit the Company from pursuing any remedies in
addition to injunctive relief, including recovery of
damages.

*Id.* **at exh. 4, p.3, par. 11.**

Before addressing the substantive merits of the parties'
arguments, the Court must, first, address the issue regarding the
omission of the liquidated damages clause in the Second Agreement
and its replacement with other possible relief. In the event the
jury finds the Second Agreement is a novation of the First
Agreement, any determination of the enforceability of the
liquidated damages provision becomes irrelevant. However, if the
jury finds the Second Agreement is a supplement to the First
Agreement, the Court must determine how the two clauses can exist
together. Thus, this Court will proceed with this analysis in the
event the jury determines the Second Agreement is a supplement.

Review of the liquidated damage provision as it appears in the
First Agreement reveals it calls for an unreasonable calculation of
damages and is, thus, unenforceable. First, the pertinent
provision allows IKON to recover the greater of actual damages or
liquidated damages.[8] By establishing the potential to recover an

---

[8]       The provision states, "[i]n the event of a breach by Employee,
Company shall be entitled to *the greater of* actual compensatory, punitive and
other damages, or liquidated damages**." Docket no. 32, exh. 2, p. 4, par. 2.1(c)**
(emphasis added).

amount more than actual damages, this stipulation violates the
universal rule of measuring damages for the breach of a contract.
Under this rule, liquidated damages should be a reasonable
calculation of the estimation of actual damages; IKON cannot be
intentionally awarded more than its actual damages. *Phillips*, 820
S.W.2d at 788. Because the provision violates this primary,
universal rule of measuring damages, it fails the second prong of
the two-part test of enforceability: the amount of liquidated
damages called for is a reasonable forecast of just compensation.
*Mayhall*, 537 S.W.2d at 322. Based upon this violation, the
liquidated damages provision in the First Agreement cannot be
enforced.

Next, for a second reason, the liquidated damages provision
does not provide for a reasonable calculation of just compensation.
Under the terms of the provision, for every customer that Furnish
contacts in violation of the non-compete covenant, the provision
allows IKON to recover the amount of the "average monthly billing"
by IKON to that customer. The universal rule of measuring damages
limits recoverable damages to the loss actually sustained. Thus,
under this rule, IKON may only recover the profits it would have
earned but for Furnish's proven breach. "Lost profits must be
based on net profits, not gross revenues." *Texaco, Inc. v. Phan*,
137 S.W.3d 763, 771 (Tex.App.-Houston [1 Dist.] 2004, no
pet.)("'Net profits' is defined as the difference between a

45

business's total receipts and all of the expenses incurred in carrying on the business."). Under this provision, IKON would recover its "billings", or gross revenues, rather than its lost profits. Thus, the provision does not provide a "reasonable forecast of just compensation" and cannot be enforced.

Finally, the provision inflates the amount IKON would have actually billed a given customer, allowing it to recover an unreasonable amount. The provision provides for the calculation of "average monthly billings" to be used in the calculation of liquidated damages and provides an example how to calculate this "average monthly billings" amount. While the provision states "the average shall be calculated based only on those months in which the account was actually billed by Company", which is a reasonable calculation of the relative "average" (just compensation), the provision then goes on to multiply this average by twelve months to calculate the amount IKON will recover under the liquidated damages provision.[9] If the provision would have stopped at awarding IKON liquidated damages in the amount of average billings for the past twelve months (notwithstanding the previous discussion regarding the "billings" v. "profits"), this would constitute a reasonable calculation of just compensation. However, it went on to multiply this average by 12 months, without any justification. Thus, the

_____

[9]    The provision states Furnish "shall pay to Company Liquidated Damages in the amount of the average monthly billing by Company ... times the applicable number of months specified in Section 2.1(a)[(12 months)]."

46

ultimate calculation of liquidated damages allows IKON to recover gross revenues from Furnish in an amount twelve times its average billings and without regard to whether it would have actually billed a customer.  This calculation, then, allows IKON to recover more gross revenues than it would have billed to a particular customer under normal circumstances.  Thus, again, violating the second prong of the enforce-ability test.

IKON argues its liquidated damages calculation is identical to that held to be reasonable in *Henshaw v. Kroenecke*, 656 S.W.2d 416, 419 (Tex. 1983).  However, IKON's reliance on *Henshaw* is misplaced.  In *Henshaw*, the liquidated damages provision, though not provided in the opinion, allowed only for "one year's average billing".  The liquidated damages provision in the First Agreement in this case takes the relative "one year's average billing", held to be a reasonable calculation in *Henshaw,* and then multiplies it by 12.  Thus, inflating the amount IKON would have actually billed a given client.  Thus, the liquidated damages provision in this case is not like that in *Henshaw*.

Because the liquidated damages provision contained in the First Agreement violates the two-prong test of enforceabilty for several reasons, it is an unenforceable penalty as a matter of law.  *See Phillips*, 820 S.W.2d at 788.  For this reason, even if the jury were to determine the Second Agreement is a supplement to the First Agreement, the liquidated damages provision is not enforceable.

47

The "Remedies for Breach" provision contained in the Second Agreement would remain intact, and thus, control.

###    E.    Furnish Attorney Fees

Furnish contends he is entitled to recover his costs and attorney fees incurred in defending this action based upon this Court's finding the non-compete agreement was unreasonable as to time, geographic area, and scope of activity.  This matter does not appear appropriate for summary judgment, but rather for debate following a final judgment in his favor.  However, to the extent the parties present argument at this time, the Court will address the issue.

Section 15.51(c) provides, if the purpose of an employment agreement is for the rendition of personal services (as in this case), and the employee shows the employer knew at the time the agreement was executed that the non-compete covenant contained unreasonable restrictions, and these restrictions were greater than necessary to protect the goodwill or other business interest of the employer, the Court may award the employee costs and attorney fees actually and reasonably incurred in defending an action to enforce the covenant.  **Tx. Bus. & Com. Code Ann. §15.51(c).**  As support for his request for reimbursement of costs and attorney fees, Furnish contends the fact that the restraints on time and geographic area changed between the First and Second Agreements reflects IKON's understanding of "case law prevailing at the time the First

Agreement was signed" and establishes its knowledge "that the non-competition provisions [in the Second Agreement] were overly broad and unreasonable."  This Court finds this inference derived from changes in the Employment Agreements to be an insufficient basis for concluding IKON knew the Second Agreement contained unreasonable restraints.  Furnish provides no other evidence to establish such a showing.  Therefore, this Court finds Furnish is not entitled to summary judgment on this issue of attorney fees.

In summary, with regard to IKON's causes of action for breach of the non-compete agreements in both the First Agreement and the Second Agreement, the Court should order the complaint be amended to reflect only one cause of action, or the Court should sua sponte dismiss one of the causes of action and hold IKON may only pursue one cause of action for violation of the non-compete agreement, either as reflected in both agreements, or as reflected in only the Second Agreement.  Next, for the reasons stated above, the Court finds some of Furnish's arguments in support of summary judgment on IKON's cause of action for breach of the non-compete covenant to be valid.  Therefore, Furnish's motion for summary judgment should be **GRANTED** on Furnish's affirmative defense on the limited issue of lack of enforceability of the time and geographic area restrictions in the non-compete covenant.  However, even in light of the requisite findings for reformation, the non-compete covenant should not be reformed, but rather, the unreasonable provisions contained

49

in the Second Agreement should simply be removed.  Thus, the time restriction of the non-compete agreement should be limited to one year immediately following Furnish's termination of employment, and the geographic-area restriction should be limited to Bexar County.

In the event the jury determines the Second Agreement is a novation of the First Agreement, the Court must reform the Second Agreement.  In such case, the time restriction should be reformed to be limited to one year immediately following Furnish's termination of employment.  The geographic-area restriction should be reformed to be limited to Bexar County.  In this event, IKON is not entitled to recover any money damages.

The Court finds the liquidated damages provision contained in the First Agreement is not reasonable, and therefore, is not enforceable.  Thus, whether the jury determines the Second Agreement is a novation or a supplement, the liquidated damages provision should not be enforced.  In the event the jury determines the Second Agreement is a supplement, and Furnish breached the non-compete covenant, damages shall be limited to those lost profits IKON can prove it incurred due to Furnish's breach.

## II.  MISAPPROPRIATION OF TRADE SECRETS

IKON asserts a cause of action for misappropriation of trade secrets.  From IKON's complaint and response to the motion for summary judgment, this Court has fashioned a description of the specific proposed trade secret IKON seeks to protect.  From these

sources, the Court finds the crux of IKON's argument to be Furnish wrongfully used its customer lists and information pertaining to its customer contacts, customer preferences, and pricing objectives (collective customer information) obtained and used by Furnish through his employment experience.

Normally, to prevail on a cause of action for misappropriation of trade secrets and/or confidential information, a plaintiff must show (1) the existence of a trade secret; (2) a breach of a confidential relationship; (3) the defendant used or disclosed the trade secret; and (4) it suffered injury as a result. *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003). "A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Id.* (*quoting* *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 760 (1958). Because it does not normally rise to the stature of the type of information afforded "secrecy", customer information that can be gleaned through general investigation and experience with a client is not normally given trade secret status. *See Guy Carpenter & Co.*, 334 F.3d at 467; *Trilogy Software, Inc. V. Callidus Software, Inc.*, 143 S.W.2d 452, 467 (Tex. App.-Austin 2004, pet. denied). However, if it constitutes information a company compiles to be used in its business, information such as a customer list, contact persons,

51

customer preferences, and pricing information may constitute a trade secret.   Although information generally known and readily available to the public or through general investigation is not protectable as a trade secret, the trade secret protection remains intact if ascertaining the information would be difficult, costly, or time-consuming.  *See Parker Barber & Beauty Supply, Inc. v. The Wella Corp.*, No. 03-04-00623-CV, 2006 WL 2918571 at *15 (Tex. App.-Austin, Oct. 11, 2006, no pet.)(*citing* **Restatement 3d. of Unfair Competition, § 39, cmt f**); *Guy Carpenter & Co.*, 334 F.3d at 467; *Trilogy Software, Inc.*, 143 S.W.2d at 467; *Allan J. Richardson & Assocs., Inc.*, 718 S.W.2d at 836.  "Consistent with this concept of secrecy, a former employee may use the general knowledge, skills, and experience acquired during employment to compete with a former employer."  *Trilogy Software, Inc.*, 143 S.W.2d at 467.

## A.   Prong One: Existence of a Trade Secret

The parties' primary arguments with regard to this cause of action focus on the first prong of IKON's burden of proof: whether IKON holds a protectable trade secret.  Furnish contends he is entitled to summary judgment on this cause of action because the collective customer information IKON seeks to protect is readily ascertainable using common trade directories and general investigation, and therefore, does not constitute a trade secret as a matter of law.  IKON contends the collective customer information is a trade secret because collection of the information required

significant time and expense and is of great value to competitors.

To make the determination whether a trade secret exists, courts ordinarily evaluate and weigh six factors. However, determination whether a customer list constitutes a trade secret involves evaluation of three of these factors: "(1) what steps, if any, an employer has taken to maintain the confidentiality of a customer list; (2) whether a departing employee acknowledges that the customer list is confidential; and (3) whether the content of the list is readily ascertainable." *Guy Carpenter & Co. Inc.*, 334 F.3d at 467 (cases cited therein); *see also Parker Barber & Beauty Supply, Inc.*, 2006 WL 2918571 at *15; *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003)(utilizing 6-factor test found in RESTATEMENT OF TORTS § 757 cmt. b).[10]   In Texas, the issues whether information is generally known or readily ascertainable and whether the employer took steps to maintain confidentiality are questions of fact; however, the ultimate determination whether a customer list constitutes a trade secret is a question of law. *See Guy Carpenter & Co.*, 334 F.3d at 468; *Chemtrust Indus. v. Share Corp.*, Civ. A. No. H-82-1224, 1987 WL 13822 at *5 (S.D. Tx. 1987).

---

[10]   This Court finds the three-factor test utilized in *Guy Carpenter & Co.* to be instructive, as this is a Fifth Circuit case, and the three-factor test incorporates all the elements included in the 6-factor test of the Restatement of Torts.

### 1.   Examination of Factors One and Two

Examination of the summary judgment evidence presented shows a genuine issue of material fact exists with regard to the first two factors to determine the existence of a trade secret for customer information: the employer took steps to maintain the confidentiality of a customer list, and the departing employee acknowledges that the customer list is confidential.  IKON presents undisputed summary judgment evidence that it and its employees consider the collective customer information to be confidential and guard this confidentiality.  **Docket no. 39, tab A, Janisch aff., pars. 17-22; tab D, Smith aff., pars. 10-16;** *see also* **Docket no. 32, tab 3, Wood depo., pp. 50-60, 133-137; tab 1, Furnish depo. pp. 59-61, 116-117, 131-132.**  In his affidavit, Janisch states IKON considers the information to be confidential, and therefore, goes to great lengths to protect it by requiring employees sign confidentiality agreements, restricting access to such information, and maintaining an audit procedure.  **Docket no. 39, tab A, pars. 17, 22.**  Smith confirmed this confidentiality by attesting this collective customer information is essential to IKON's maintenance of a competitive advantage in the small market place, and therefore, it protects it from competitors.  **Docket no. 39, tab D, pars. 10,12,14-16.**

With regard to factor two, Furnish acknowledged this confidentiality when he signed the Employment Agreements.  In his

deposition, Furnish also acknowledged this confidentiality, by stating, "things we do in-house, jobs, pricing, customers that we dealt with ... that would be something that to me is confidential." *See* **Docket no. 39, tab E, pp. 116-117.** Although it does not cover the extent of all of the information IKON seeks to protect, this evidence raises a genuine issue of material fact whether Furnish acknowledges the confidentiality of at least a portion of the collective customer information IKON seeks to protect. Therefore, upon consideration of this summary judgment evidence the Court finds a genuine issue of material fact exists whether IKON took steps to maintain the confidentiality of the collective customer information and whether Furnish acknowledges the confidentiality of the collective customer information.

### 2.   Examination of Factor Three

The focus of the parties' primary arguments with regard to the existence of a trade secret relate to the third factor to be considered by this Court: whether the content of the collective customer information is readily ascertainable.  IKON contends the collective customer information was collected through years of experience with each particular client and, although customer contacts and telephone numbers are available through industry directories, the extent of the information in its database is not. Furnish contends the collective customer information IKON seeks to protect is readily ascertainable through general investigation and

inquiry because the market base is relatively small.  While IKON contends the information is confidential and may be difficult to obtain, Furnish contends the information can be gleaned by simple inquiry with the client base and good general investigation, thus precluding it from reaching trade secret status.

Furnish presents summary judgment evidence showing the collective customer information is, for the most part, generally known and readily available to the public or through focused, general investigation.  Furnish's evidence shows that while IKON engages in many varied services for the legal and business community, Southwest engages only in the document duplication service for law firms in San Antonio, thus making the competitive market base very small and transparent.  **Docket no. 32, tab 3, Wood depo., p. 38; tab 1, Furnish depo. p. 12; tab 5, Rexilius depo., p. 13.**  In his deposition, Keenan Mark Wood attests IKON's Account Managers used industry directories as a resource to gain information about current and potential customers.  **Docket no. 39, tab I, Wood depo., pp. 61-62, 71.**  These directories are available to the public and are used by IKON's competitors as well.  *Id.*  Further, it is undisputed Southwest held many of the same clients as IKON.  It can be presumed Southwest thereby collected its own customer data through its experience with the same clients.

Also, Furnish attests in his deposition that, due to the small market base, any competitor's pricing scheme on a particular

customer is readily available by simple inquiry of the customer. **Docket no. 32, tab 1, Furnish depo., pp. 120, 131-133.** Further, because the market base is so small, it is common knowledge, not secret, how each competitor prices its services. *Id.* In his deposition, Chad Smith states, "a lot of people" have a "feel for what the industry is going to dictate" with respect to price "so typically the smaller mom & pop shops come in and they just price themselves just conveniently under the same price." **Docket no. 32, tab 3, Smith depo., pp. 88-89.** Finally, Furnish's summary judgment evidence shows customers in the San Antonio legal community do not use one copy service exclusively, but change according to circumstantial factors such as time constraints, project size and other specific needs. **Docket no. 32, tab 3, Wood depo., pp. 53-56, 102, 189.**

Texas case law supports Furnish's theory that the customer information IKON seeks to protect is not of similar nature of the customer information that has been historically held to rise to the status of a trade secret. *See Guy Carpenter & Co.*, 334 F.3d at 467-468. In *Guy Carpenter*, the Court evaluated many Texas cases in which customer information and pricing schemes were found to fall short of trade secret status. *Id.* The Court concluded in that case that information similar to that in this case failed to achieve trade-secret status because the information was readily ascertainable. *Id.* at 468. To make this determination, the Court

57

found participants in the market "freely disclosed" the information when asked, the market was relatively small, and the confidential customer list was, therefore, relatively short.  Based upon these factors, the employee could easily reconstitute the information from general experience and with the aid of trade publications. *Id*.

This Court acknowledges the facts and circumstances in this case closely resemble those in *Guy Carpenter*.  However, summary judgment is precluded because IKON presents summary judgment evidence sufficient to raise a genuine issue of material fact whether the time and expense involved in compiling and recording a database of the collective customer information qualifies it for trade secret status.  In an affidavit from Chad Smith, IKON's Legal Document Services Sales Manager for San Antonio, he explains, "information regarding clients' pricing, expectations, case load, and firm structure is essential to developing an understanding of the clients' needs and identifying document management solutions that will meet those needs." **Docket no. 39, tab D, par. 10**.  Smith explains this information also includes

> information regarding the identities of the specific
> buyers within a particular client organization, which
> consists of dozens or even hundreds of otherwise
> undifferentiated employees or representatives; the types
> and quantities of services those end-use producers need
> most; and the many different and specific kinds of
> production preferences and pricing needs the end-user or
> client organization, generally, might have....This
> information takes a great deal of effort and expense to

> develop because clients do not always explain or articulate what their particular preferences and requirements are.  It takes a significant investment of time by the Account Manager to develop, over the course of repeated dealings with the client, an understanding of these needs and the opportunities that are presented by each different customer or purchaser.

*Id*. **at par. 11.**  The evidence presented in Chad Smith's affidavit shows the information IKON seeks to protect, such as an "understanding of these needs and the opportunities that are presented by each different customer or purchaser", was gathered and collected through each Account Manager's course of dealings with the client.  *Id*. at pars. 11-15.  IKON also presents summary judgment evidence showing the collective customer information cannot all be gleaned from trade directories and phone books, but requires investigative and experiential work with the client.  **Docket no. 39, tab I, Woods depo., pp. 71-72.**

In summary, the evidence presented by both parties raises a genuine issue of material fact whether the collective customer information IKON seeks to protect contains information requiring extensive time and resources to collect and whether the information provides a unique competitive advantage worthy of protection as a trade secret.  Therefore, Furnish's motion for summary judgment on IKON's cause of action for misappropriation of trade secrets should be **DENIED.**

**B.     Prong Three: Defendant Used or Disclosed the Trade Secret**

The third prong of a plaintiff's burden of proof to show misappropriation of a trade secret is "the defendant used or disclosed the trade secret." ***Guy Carpenter & Co.***, 334 F.3d at 467. Here, IKON admits Furnish did not misappropriate its entire collective customer information, nor did he physically remove any customer information from its records.  Instead, IKON contends Furnish utilized customer information pertaining to his specific clients gained through his experience and expertise while working for IKON.  Because Furnish utilized any client information in his new position with Southwest, IKON contends he improperly used or disclosed a trade secret.

In support of its argument, IKON presents Furnish's deposition.  In this deposition, Furnish states that while at Southwest, if a previous customer called him, he would accept their business, and he did initiate some contact. **Docket no. 39, tab E, pp. 96-97, 113-115.**  Furnish also stated that while a customer would tell him IKON's price on a job, his knowledge of IKON's pricing scheme helped him in bidding work. ***Id.*** at 131-132.  Furnish presents summary judgment evidence attesting he did not physically remove any of the collective customer information IKON seeks to protect, he never disclosed any of the collective customer information to anyone, nor did he use any of this information to

solict business for Southwest.  **Docket no. 32, tab 1, pp. 106-109, 128-129, 229-230.**

This Court finds this evidence raises a genuine issue of material fact whether Furnish used or disclosed the information IKON seeks to protect as a trade secret.  For this reason, Furnish has failed to establish he is entitled to summary judgment as a matter of law on IKON's cause of action for misappropriation of trade secrets.  Therefore, Furnish's motion for summary judgment on IKON's cause of action for misappropriation of trade secrets should be **DENIED.**

## III. TORTIOUS INTERFERENCE

IKON asserts the cause of action against Furnish of tortious interference with its existing business contracts.  Furnish contends he is entitled to summary judgment on this cause of action because IKON cannot prove the required elements.  Specifically, Furnish contends IKON held only one contract with a client to perform copy services; this contract expired on its own terms, and; IKON chose to not re-bid the contract work.  IKON also presents a cause of action against Furnish for tortious interference with prospective business contracts.  Furnish contends he is entitled to summary judgment on this cause of action because IKON cannot prove the required element that he committed an independent tort, such as fraud or assault.

IKON does not respond to these summary judgment arguments in its response or sur-reply to the motion for summary judgment. Because it does not respond to Furnish's assertions of entitlement to summary judgment on these causes of action, IKON essentially concedes these points. Review of the undisputed facts and evidence presented supports Furnish's assertions of entitlement to summary judgment on IKON's causes of action for tortious interference with actual and prospective business contracts. Therefore, Furnish's motion for summary judgment on these causes of action should be **GRANTED**.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that Furnish's motion for summary judgment on IKON's causes of action for tortious interference with prospective business relationships and tortious interference with actual contracts should be **GRANTED**. Furnish's motion for summary judgment on IKON's cause of action for misappropriation of trade secrets be **DENIED**. It is also the recommendation of the Magistrate Judge that Furnish's motion for summary judgment on IKON's cause of action for violation of the parties' non-compete covenant should be **GRANTED in part** and **DENIED in part**.

With regard to the cause of action for breach of the non-compete covenant, it is, first, recommended the Court find IKON can assert only one collective cause of action for breach of the non-

compete agreement.   Next, it is recommended Furnish's motion for summary judgment on his novation affirmative defense be **DENIED**. The Court recommends granting summary judgment on Furnish's affirmative defense of unenforceability, limited to a finding the non-compete covenant is unreasonable as to its time and geographic area restrictions.   It is further recommended the Court modify these provisions to reflect a one-year time restriction and a geographic-area restriction of Bexar County.   Finally, it is recommended the Court find the liquidated damages provision in the First Agreement is not enforceable because it does not reasonably calculate just compensation for several reasons.   However, IKON's receipt of any money damages with regard to violation of the non-compete covenant is dependent upon the jury's finding on Furnish's novation defense.

### Instructions for Service and
### Notice of Right to Appeal/Object

The United States District Clerk shall serve a copy of this United States Magistrate Judge's Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.   Pursuant to Title 28 U.S.C. Section 636(b)(1) and Rule 72(b), Fed.R.Civ.P., any party who desires to object to this report must serve and file written objections to the Memorandum and Recommendation within 10 days

after being served with a copy unless this time period is modified by the district court.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  ***Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge***.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a de novo determination by the district court.  ***See Thomas v. Arn***, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation contained in this Memorandum and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  ***Douglass v. United Servs. Auto. Ass'n***, 79 F.3d 1413, 1428 (5th Cir. 1996).

**SIGNED** October 31, 2007.

_____

JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE

64